### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| Donald N. Sperling, Esq., Personal | * |
| Representative of the Estate of Clara | * |
| Maribel Oxlaj-Gonzalez, Deceased | * |
| | *  Case No.: 1:07-cv-00557 |
| Plaintiff | *  Judge Colleen Kollar-Kotelly |
| | *  Scheduling Conference: August 6, 2007 |
| v. | * |
| | * |
| Washington Metropolitan Area Transit Authority | * |
| | * |
| Defendant | * |

## RULE 26(a)(1) INITIAL DISCLOSURE STATEMENT

COMES NOW the Plaintiff Donald N. Sperling, Esq., Personal Representative of the Estate ("the Estate") of Clara Maribel Oxlaj-Gonzalez ("Plaintiff's Decedent"), and Legal Representative of the Estate, by and through counsel, and for his initial disclosure statement states as follows (terms in italics are terms defined in the Plaintiff's Complaint herein):

(A)  **The name, and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information:**

1) Donald N. Sperling, Personal Representative and Legal Representative of the Estate – how the Collision occurred, and the extent of her injuries, discomfort and damages and her loss of future income, power of attorneys signed by the survivors of Plaintiff's Decedent, and the establishment of the Estate in the Probate Division of the District of Columbia Superior Court.

2) Acie Inge – how the Collision occurred, the extent of his training and experience to drive the *Defendant's Vehicle*, his knowledge of the *Intersection*, the injuries caused to the *Plaintiff's Decedent*, her pain & suffering and her visible condition following the Collision.

3) Washington Metropolitan Area Transit Authority-The Defendant has knowledge of how the collision occurred, the identity, training and experience of its bus driver (Acie Inge), its knowledge of the Intersection, its actions (or omissions) in maintaining the signage at the *Intersection* and/or its contact with the District of

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL,
& GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

Columbia regarding the signage, and the result of its investigation finding its driver to have been at fault in causing the Collision.

4) Detective Wayne Washington, Major Crash Investigative Unit, and other as-yet unidentified employees of the Metropolitan Police Department, 6001 Georgia Avenue, N.W., Washington, D.C. 20011, 202-576-6745, has knowledge of how the Collision occurred, the layout of the Collision scene, and the investigation of the Collision, the investigation of the Collision and any reconstruction of the Collision conducted by the Department. The District of Columbia has yet to provide a copy of their reconstruction report.

5) Carlos Quintana, 613 Wayne Avenue, Silver Spring, Maryland 20910, 202-486-1028, was an eyewitness to the Collision. A copy of his statement to Plaintiff's investigator Sergio Olivarria, On Guard Security and Investigative Services, Inc., 15713 Crabbs Branch Way, Suite 160, Rockville, Maryland 20855, is attached.

6) Marie-Lydie Y. Pierre-Louis, M.D., District of Columbia Medical Examiner's Office, 1910 Massachusetts Avenue, S.E., Building 27, Washington, D.C. 20003, conducted the medical examination and filed the Certificate of Death, and has knowledge as to the injuries sustained by the Plaintiff's Decedent in the Collision, and the causes of death, her physical condition at death, and any conscious pain and suffering sustained by Plaintiff's Decedent following the Collision.

7) Fiona J. Couper, Ph.D., District of Columbia Medical Examiner's Office, 1910 Massachusetts Avenue, S.E., Building 27, Washington, D.C. 20003, conducted the post-mortem Toxicology study on Plaintiff's Decedent and issued a Toxicology Report indicating that no drugs or volatiles were detected in the Plaintiff's Decedent.

8) The following family members of Plaintiff's Decedent have personal knowledge as to the Plaintiff's character, personality, upbringing, development and life history, as well as the level of material and non-material support given by her to each of them during her lifetime:

  i.   Mrs. Transito Gonzalez-Oxlaj (mother)
  ii.  Mr. Mateo Oxlaj-Gonzalez (father)
  iii. Tomasa Oxlaj-Gonzalez (sister)
  iv.  Nicolasa Oxlaj-Gonzalez (sister)

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL, & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

     v.  Yolanda Oxlaj-Gonzalez (sister)

    vi.  Jose Oxlaj-Gonzalez (brother)

   vii.  Domingo Oxlaj-Gonzalez (brother)

  viii.  Floridalma Graciela Oxlaj-Gonzalez (sister)

   ix.  Ilda Ebarista Oxlaj-Gonzalez  (sister)

        Canton Chicua
        Quetzaltenango
        Guatemala, C.A.
        011-502-5692-6108 (home)
        011-502-5-716-0488 (cell)

     x.  Fabian Oxlaj-Gonzalez (brother)

    xi.  Ruben Oxlaj-Gonzalez (brother)

   xii.  Manuel Oxlaj (nephew)

  xiii.  Nicolas Oxlaj (nephew)

  xiv.  Jose Oxlaj (nephew)

   xv.  Transito Oxlaj (niece)

        1413 Spring Road Washington, DC  20010
        202-674-6322

9) David Plant, P.E., an engineer retained by the Plaintiff, has conducted/will conduct an investigation/reconstruction of the Collision.  A report will be provided to the Defendants when published.

10) Clarence Williams of the Washington Post wrote a news article describing the Collision which was published on page B04 on January 17, 2007.

11) Lena H. Sun of the Washington Post conferred with Plaintiff's attorneys about possibly doing a news story regarding the Complaint herein being filed.  She and Nick Miroff wrote a news article referencing the Collision.

12) Dave Statter of 9News Now wrote an online report regarding the Collision.

13) Claudia Useda of Univision, Inc., 202-351-8596 conferred with Plaintiff's attorneys about possibly doing a profile of the Plaintiff.

14) Tina Johnson of the Washington Metropolitan Area Transit Authority, 600 Fifth Street, N.W., Suite 500, Washington, D.C.  20001, 202-962-1234 is a claims adjustor who was assigned to Plaintiff's claims.  The extent of her knowledge of pertinent facts is unknown.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL,
& GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

15) Miguel Almaguer, WRC-TV News Department WRC-TV (local NBC affiliate) News aired a report regarding the Collision in which Emeka Moneme, the Director of the District of Columbia Department of Transportation and D.C. Mayor Adrian Fenty spoke about the dangerousness of the *Intersection* and the error in the signage regarding the left turn made by the *Defendant's Vehicle*. Among other things, Mr. Momene was quoted as saying that the "except buses" sign had been missing for "months". The report showed that the "except buses" sign had been replaced after the Collision. D.C. Council Member Jim Graham also appeared. The piece was reported by Miguel Almaguer of NBC News and aired January 17, 2007 at 5:14 p.m.

16) D.C. Mayor Adrian Fenty, John A. Wilson Building, 1350 Pennsylvania Avenue, N.W., Washington, D.C. 20004, 202-727-2980. See item #15.

17) D.C. Council Member Jim Graham, John A. Wilson Building, 1350 Pennsylvania Avenue, N.W., Suite 105, Washington, D.C. 20004, 202-724-8181. See item #15.

18) D.C. Department of Transportation Director Emeka Moneme, 2000 Fourteenth Street, N.W., Sixth Floor, Washington, D.C. 20009, 202-673-6813. See item #15.

19) Wanda C. Bacon, W.H. Bacon Funeral Home, Inc., 3447 14th Street, N.W., Washington, D.C. 20010, buried the Plaintiff's Decedent and has accompanying knowledge of her condition following the Collision.

20) The employers referenced below have knowledge of her character, job history, job performance, and income and income potential:

   i. Traveloge, 1917 Bladensburg Road, N.E., Washington, D.C. 20002. Earning Statements from March and April of 2006 are attached.

   ii. Keshav Enterprises, Inc. t/a Motel 6, 6711 Georgia Avenue, N.W., Washington, D.C. 20012, 202-722-1600. Earning Statements from July, August and September of 2006 are attached.

   iii. Unidentified Ethiopian Restaurant located on 18th Street on or near its intersection with Kalorama Street. Plaintiffs are attempting to obtain specific information and will provide same to the Defendants upon receipt.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL,
& GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

**(B)     A copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment:**

Copies of the above-referenced probate paperwork, death certificate, autopsy and toxicology reports, Quintana Statement, news articles, earnings statements and police report are attached. Additionally, photographs taken by David Plant and a DVD copy of a NBC-News 4 report are in the possession of undersigned counsel and are available for inspection in accordance with the Rules of this Court.

**(C)     A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered;**

1)  W.H. Bacon Funeral Home, Inc., 3447 14th Street, N.W., Washington, D.C. 20010, Funeral Expenses $4,118.00, January 26, 2007. Plaintiff is in the process of obtaining copies of additional bills for funeral expenses incurred in Guatemala, and will provide those in discovery when received.

2)  Plaintiff died prematurely as a direct and proximate result of the Collision. Upon information and belief, no medical treatment was rendered prior to death.

3)  There will be a claim for lost of future earning capacity, however unable to determine the extent at this time.

4)  Pain and suffering – value of same to be determined by the trier of fact.

(D)    **Insurance Agreements –** Upon information and belief, both Defendants are self-insured.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL,
& GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

Respectfully submitted,

STEIN, SPERLING, BENNETT, DE JONG,
DRISCOLL & GREENFEIG, P.C.

By: _____

Jeffrey Fenster  [#09889]
25 West Middle Lane
Rockville, Maryland 20850
(301) 340-2020

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of July, 2007 a copy of the foregoing was served by U.S. mail, first-class postage prepaid, to the following persons:

Fredric H. Schuster, Esq.                          Leah Brownwell Taylor, Esq.
Washington Metro Area Transit Authority            Assistant Attorney General
600 Fifth Street, N.W.                             441 Fourth Street, N.W., 6N
Washington, D.C. 20001                            Washington, D.C. 20001

_____

Jeffrey Fenster

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL,
& GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| Donald N. Sperling, Esq., Personal | * |
| Representative of the Estate of Clara | * |
| Maribel Oxlaj-Gonzalez, Deceased | * |
| | *     Case No.: 1:07-cv-00557 |
| Plaintiff | *     Judge Colleen Kollar-Kotelly |
| | *     Scheduling Conference: August 6, 2007 |
| v. | * |
| | * |
| Washington Metropolitan Area Transit Authority | * |
| | * |
| Defendant | * |

## CERTIFICATE REGARDING DISCOVERY

I HEREBY CERTIFY that on July 30, 2007, I served on all counsel or pro se parties hereto, Plaintiff's RULE 26(a)(1) INITIAL DISCLOSURE STATEMENT, together with a copy of this Certificate Regarding Discovery.  I will retain the original documents in my possession, without alteration, until the case is concluded in this Court, the time for noting an appeal has expired and any appeal noted has been decided.

Respectfully submitted,

STEIN, SPERLING, BENNETT, DE JONG,
DRISCOLL & GREENFEIG, P.C.

By: _____

Jeffrey Fenster  [#09889]
25 West Middle Lane
Rockville, Maryland 20850
(301) 340-2020

Attorneys for Plaintiff

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL,
& GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of July, 2007 a copy of the foregoing was served by U.S. mail, first-class postage prepaid, to the following persons:

Fredric H. Schuster, Esq.                    Leah Brownwell Taylor, Esq.
Washington Metro Area Transit Authority      Assistant Attorney General
600 Fifth Street, N.W.                        441 Fourth Street, N.W., 6N
Washington, D.C. 20001                        Washington, D.C. 20001


_____

Jeffrey Fenster

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL,
& GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

Petition for Probate

© 200 . .HINGTON LAW REPORTER COMPANY · FORM 900

# Superior Court of the District of Columbia

**PROBATE DIVISION**
Washington, D.C. 20001-2131

Administration No. _0000312-07_

Estate of

Clara Maribel Oxlaj-Gonzalez ___ Age __24__

Deceased

## PETITION FOR PROBATE
(For decedents dying on or after April 27, 2001)

☒ Petition for Abbreviated Probate
    ☒ Unsupervised Administration
    ☐ Supervised Administration

☐ Appointment of Personal Representative(s)

☐ Appointment of Successor Personal Representative(s)
    ☐ Unsupervised Administration
    ☐ Supervised Administration

☐ Petition for Standard Probate
    ☐ Unsupervised Administration
    ☐ Supervised Administration

☐ Appointment of Co-Personal Representative(s)
    (each must sign)

☐ Appointment of Special Administrator(s)

☐ Admission as an International Will

**NOTE:** The appointment of a personal representative shall constitute an order for unsupervised administration unless the order specifically provides for supervised administration as provided in D.C. Code Section 20-402.

The Petition of:

| Name | Age | Address |
|------|-----|---------|
| Donald N. Sperling | 58 | 25 West Middle Lane, Rockville, Maryland 20850 |
| Transito Gonzalez-Chaj | 60 | Canton Chicua, Quezaltenango, Guatemala, C.A. |
| Mateo Oxlaj-Velasquez | 63 | Canton Chicua, Quezaltenango, Guatemala, C.A. |

hereinafter "petitioner" being a citizen of the United States or a lawfully admitted permanent resident thereof, of legal age, and not otherwise excluded from acting as personal representative pursuant to D.C. Code §20-303(b), shows:

1. _Clara Maribel Oxlaj-Gonzalez_ , the decedent, a domiciliary of _the District of Columbia_ residing at _1413 Spring Road, N.W._ died at _16th Street & Park Road, NW, DC_ on _January 17, 2007_ (with) (without) a will.

2. Petitioner is entitled to be appointed personal representative of the decedent's estate under D.C. Code §20-303 for the following reasons: _Decedent's parents who are the only interested persons in the estate reside in Guatemala and have consented to my appointment as Personal Representative; and I am not excluded by Code._

3. The court has jurisdiction in this matter because —
    ☒ decedent died domiciled in the District of Columbia
    ☐ other — please state basis for jurisdiction _____

4. There are no other proceedings regarding the administration of the estate except _the pursuit of a wrongful death claim._

4(a). If the decedent is survived by a spouse, state the names of any surviving descendants of the spouse who are not descendants of the decedent (delete if not applicable). _____

5. The petitioner has made a diligent search for wills and codicils of the decedent, and, to the best knowledge of the petitioner the will dated _____ and codicils dated _____ accompanying

SCR-PD 401/June 2001

~~this petition (is) (are) the decedent's last will, and petitioner knows of no later will or codicil, and said will and codicil(s), if any, came into petitioner's hands in the following manner:~~ No Will Exists _____

~~If an international will, the certificate of the authorized person is/is not attached.~~

6.  All information required pursuant to D.C. Code §20-304(a) has been furnished ~~except~~ _____

_____

NOTE: Paragraphs 7- 9 may be completed at the option of the petitioner. (Attach additional sheets if necessary.)

7.  It is requested that witnesses to the alleged will dated _____ and the authorized person, if an international will, appear and give testimony regarding its execution, (give reasons and complete names and addresses of witnesses): _____

_____

_____

8.  It is requested that an individual having custody of the original will be directed to deliver same to the Court. (State reasons for this request including all demands made for delivery of the will): _____

_____

_____

9.  It is requested that the Court issue an Order to Show Cause why the provisions of a lost or destroyed will should not be admitted to probate. (Set forth the reasons for this requested relief): _____

_____

10. If supervised administration is (required) (requested) it is for the following reasons:

☐ Decedent's will directs supervised administration.

☐ Although decedent's will directs unsupervised administration, supervised administration is requested for the following reasons: _____

_____

☐ Other _____

11. ☒ Bond is not required because (Note: Refer to D.C. Code Section 20-502 for bond provisions).

☐ decedent's will waives bond.          ☒ a signed written waiver of each interested person has been filed.

☐ the personal representative(s) (is/are) the sole heir(s)/legatee(s).

☐ Bond is required and no reduction in bond is requested.

☐ Bond is required in the amount of $ _____ because some but less than all interested persons waive bond.

☐ Bond is required but a reduction is requested in the amount of $ _____ , being the value of any real or personal property, the sale or distribution of which will be restricted without prior court authorization.

(If reduced bond is sought list cash accounts requiring Court order for withdrawal and/or other personal or real property for which prior court authorization for sale or distribution must be obtained). _____

_____

_____

_____

~~Petitioner seeks the following limitation(s) on his/her powers - Refer to D.C. Code Sections 20-404, 20-406 and 20-741 with respect to powers.~~ _____

_____



**The decedent was survived by** - (please check appropriate boxes) and indicate below those who did not survive by at least 120 hours.

a. ☐ Spouse.　　　　　　　　☒ No spouse. Check appropriate box and go to b.

b. ☐ Children.　　　　　　　☐ Descendants of predeceased children. If so, stop here; if not, go to c.

c. ☐ Grandchildren.　　　　　☐ Descendants of predeceased grandchildren. If so, stop here; if not, go to d.

d. ☒ Parents. If so, stop here; if not go to e unless there is a spouse

e. ☐ Brothers and/or Sisters.　☐ Descendants of predeceased brothers and/or sisters. If so, stop here; if not, go to f.

f. ☐ Nieces and/or Nephews.　☐ Descendants of predeceased nieces and/or nephews. If so, stop here; if not, go to g.

g. ☐ Uncles and/or Aunts. If so, stop here; if not, go to h.

h. ☐ First cousins. If so, stop here; if not, go to i.

i. ☐ Grandparents. If so, stop here; if not, go to j.

j. ☐ Other heirs. If none, go to k.

k. ☐ Notify Office of the Corporation Counsel, Special Litigation Section,
　　441 4th Street, N.W., 6th Floor, Washington, D.C. 20001

**LIST OF INTERESTED PERSONS** must include names of heirs if decedent died intestate; heirs and legatees, including trustees and all named Personal Representatives if the decedent died testate. Refer to D.C. Code §19-301 through 312 and §20-101(d)(1). Add additional sheets, if needed. Note: If each trustee is also a petitioning party or acting personal representative, list all beneficiaries under trust. Refer to D.C. Code §20-101 (g). Any creditor of the decedent, including those persons whose rights accrue at the time of death, *who has timely presented a claim in excess of $500* that has not been barred or discharged is also an interested person. Petitioner(s) should update list of interested persons or creditors with claims in excess of $500 as they become known.

Indicate, when applicable, grandchildren and nieces and nephews by family groups,

| Name of Heir/Legatee/Creditor ($500) | Address | Relationship (Age, if under 18) |
|---|---|---|
| Donald N. Sperling, Personal Representative | 25 West Middle Lane Rockville, Maryland 20850 | None *(Applicant)* |
| Transito Gonzalez-Chaj, Mother | Canton Chicua Quezaltenango, Guatemala, C.A. | Mother *(Heir)* |
| Mateo Oxlaj-Velasquez, Father | Canton Chicua Quezaltenango, Guatemala, C.A. | Father *(Heir)* |

**(Use continuation sheet if necessary)**

(If under age of 18 or an adult who is legally disabled, also list as an interested person the judicially appointed guardian, conservator or committee for such person. If no judicially appointed representative exists then list the parent, or custodian, or an attorney-in-fact, if any, for such person (subject to the terms of the power of attorney), or any other person with legal authority to act for such disabled person. Also, indicate when applicable, the dependency of any adult children.

**WITNESSES TO WILLS/CODICILS (Names)**

**AUTHORIZED PERSON (Applicable only to an international will)**

**(Use continuation sheet if necessary)**

- 3 -

**Character, Location and Estimated Value of Property titled in decedent's name:**

**Real Property** located in the District of Columbia                    **Estimated Value**

Total $ _____

**Personal Property** located in the District of Columbia and other jurisdictions

**Value of household furniture, automobiles, furnishings, appliances and personal effects**

**Value of all other personal property**
Possible receipt of proceeds from a wrongful death claim

Total $ _____

**Debts and Funeral Expenses**
    Debts secured:                                         Total $ ____-0-____

    Debts Unsecured:                                       Total $ ____-0-____

    Funeral Expenses:

        ☒ Paid by _Fabian Oxlaj_____          Amount paid $ _4,444.00___
                         name

        ☐ Unpaid

                                                    Amount unpaid $ _____

- 4 -

**WHEREFORE**, the petitioner prays that petitioner(s) be appointed (supervised) (unsupervised) personal representative(s) of the decedent's estate in (abbreviated) (standard) probate proceeding, and that the (court find that the decedent died intestate) (will dated _____ and codicil(s) dated _____ , exhibited with the petition be admitted to probate and record) and that the additional relief be granted:

Check appropriate box(es)

❑ order witnesses to the alleged will dated _____ , to
appear and give testimony regarding its execution;

❑ order _____ who is alleged to
have custody of will dated _____ , to deliver it to the Court;

❑ order any interested person to show cause why the provisions of the lost or destroyed will dated _____ ,
should not be admitted to probate;

❑ Other _____

## DECLARATION OF PETITIONER

I do solemnly declare and affirm under the penalty of law that the contents of the foregoing petition are true and correct to the best of my knowledge, information and belief.

| | | 301-340-2020 |
|---|---|---|
| Signature of Attorney for Petitioner | Signature of Petitioner   Donald N. Sperling | (Tel. No.) |

Donald N. Sperling
Typed name of Attorney

Signature of Petitioner   Transito Gonzalez-Chaj    (Tel. No.)

25 West Middle Lane
Rockville, Maryland 20850
Attorney's Address

Signature of Petitioner   Mateo Oxlaj-Velasquez    (Tel. No.)

301-340-2020
Telephone No.

238972
Unified Bar No.

## ACCEPTANCE AND CONSENT OF EACH PERSONAL REPRESENTATIVE

I do hereby accept the duties of the office of personal representative of the estate of <u>Clara Maribel Oxlaj-Gonzalez</u>
_____ deceased, whether in a supervised or unsu-

pervised administration, and consent to personal jurisdiction in any action brought in the District of Columbia against me as

personal representative or arising out of the duties of the office of personal representative pursuant to D.C. Code §20-501.

_____      _____      _____
Signature of Petitioner            Signature of Petitioner            Signature of Petitioner
Donald N. Sperling


## POWER OF ATTORNEY
### To be Executed By Each Non-resident Personal Representative

Pursuant to D.C. Code §20-303(b)(7), I do hereby irrevocably appoint the Register of Wills and successors in office as the
person upon whom all notices and process issued by a competent court in the District of Columbia may be served with the
same effect as personal service in relation to all suits or matters pertaining to the estate in which the letters are to issue.

_____          25 West Middle Lane
(Signature)                      Rockville, Maryland 20850
Donald N. Sperling              _____
                                 (Address, may not be a P.O. Box)


_____          _____
(Signature)                      (Address, may not be a P.O. Box)


_____          _____
(Signature)                      (Address, may not be a P.O. Box)

*The law firm of Stein, Sperling et al hereby
guarantees the payment of court costs and
the costs of publication.*

*Susan H. Payne, Paralegal*

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**PROBATE DIVISION**
**Washington, D.C. 20001-2131**

IN THE ESTATE OF:

**CLARA MARIBEL OXLAJ-GONZALEZ**      ADMINISTRATION NO: 312-07

## RENUNCIATION OF RIGHT TO SERVE AS PERSONAL REPRESENTATIVE

I, Mateo Oxlaj-Velesquez, being a competent adult, irrevocably renounce any right or claim

to serve as personal representative of the Estate of my daughter, Clara Maribel Oxlaj-Gonzalez. I

hereby certify that I am unable to act as Personal Representative of the estate and consent to the

appointment of Donald N. Sperling as Personal Representative.

WITNESS:

_____          *M. Ox Laj*
                                 MATEO OXLAJ-VELESQUEZ                Date

COUNTRY OF GUATEMALA        :
CITY OF QUEZALTENANGO       :

I certify that on this __dos__ day of March 2007 before the subscriber, a Notary Public in
and for Quezaltenango, Guatemala, personally appeared Mateo Oxlaj-Velesquez and affirmed,
under penalties of perjury that the contents of the foregoing Renunciation are true to the best of his
knowledge and belief and acknowledge that it was his act and deed.

                                      _____
                                      Notary Public

My Commission Expires:   4657

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL &
GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

L:\CLIENTS\O\Oxlaj-Gonzalez.Clara Maribel\Autoacci.0001\Mateo Renunciation of Interest.doc

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## PROBATE DIVISION
### Washington, D.C. 20001-2131

IN THE ESTATE OF:

**CLARA MARIBEL OXLAJ-GONZALEZ**    ADMINISTRATION NO: _312-07_

### RENUNCIATION OF RIGHT TO SERVE AS PERSONAL REPRESENTATIVE

I, Transito Gonzalez-Chaj, being a competent adult, irrevocably renounce any right or claim to serve as personal representative of the Estate of my daughter, Clara Maribel Oxlaj-Gonzalez. I hereby certify that I am unable to act as Personal Representative of the estate and consent to the appointment of Donald N. Sperling as Personal Representative.

WITNESS:

_____    X _T. Gonzalez_ _____    Date
                              TRANSITO GONZALEZ-CHAJ


COUNTRY OF GUATEMALA           :
CITY OF QUEZALTENANGO          :

I certify that on this _dos_ day of March 2007 before the subscriber, a Notary Public in and for Quezaltenango, Guatemala, personally appeared Transito Gonzalez-Chaj and affirmed, under penalties of perjury that the contents of the foregoing Renunciation are true to the best of her knowledge and belief and acknowledge that it was her act and deed.

_____
Notary Public

My Commission Expires:  _4657_____

LICENCIADO
Luis Felipe Roldán Gómez
Abogado y Notario

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850
TELEPHONE 301/340-2020

L:\CLIENTS\O\Oxlaj-Gonzalez.Clara Maribel\Autoacci.0001\Transito Renunciation of Interest.doc

Consent to Appointment of Personal Representative

# Superior Court of the District of Columbia
### PROBATE DIVISION
### Washington, D.C. 20001-2131

Estate of

Administration No. _312-07_

Clara Maribel Oxlaj-Gonzalez
_____
Deceased

## CONSENT TO APPOINTMENT OF PERSONAL REPRESENTATIVE

I Mateo Oxlaj-Velasquez _____ , being a competent adult heir and/or

legatee of Clara Maribel Oxlaj-Gonzalez _____ deceased, and being familiar

with the petition of Donald N. Sperling _____ for Letters of Administration, do

hereby consent to the appointment of petitioner(s).



_____
Witness

_M. Oxlaj_
(Signature of heir or legatee)

SCR-PD 402/Jan.2000

Consent to Appointment of Personal Representative

# Superior Court of the District of Columbia
### PROBATE DIVISION
### Washington, D.C. 20001-2131

Estate of

Administration No. _312-07_

Clara Maribel Oxlaj-Gonzalez
_____
Deceased

## CONSENT TO APPOINTMENT OF PERSONAL REPRESENTATIVE

I Transito Gonzalez-Chaj _____ , being a competent adult heir and/or

legatee of Clara Maribel Oxlaj-Gonzalez _____ deceased, and being familiar

with the petition of Donald N. Sperling _____ for Letters of Administration, do

hereby consent to the appointment of petitioner(s).

Witness

_T. Gonzalez_
(Signature of heir or legatee)

SCR-PD 402/Jan.2000

Waiver of Personal Representative's Bond

# Superior Court of the District of Columbia
### PROBATE DIVISION
Washington, D.C. 20001-2131

Estate of

Administration No. _312-07_

Clara Maribel Oxlaj-Gonzalez
_____
Deceased

## WAIVER OF PERSONAL REPRESENTATIVE'S BOND

I, Mateo Oxlaj-Velasquez _____ , being a competent

☑ adult heir and/or legatee of Clara Maribel Oxlaj-Gonzalez _____ , deceased, or

☐ a creditor of the decedent whose claim in excess of $500.00 has not been barred or discharged,

and being familiar with the petition of  Donald N. Sperling _____

for Letters of Administration, do hereby waive protection of any bond so far as my interest in said estate is concerned.



Witness

M. Oxlas
Signature

SCR-PD 404(f)/Jan. 2000

Waiver of Personal Representative's Bond

# ♔uperior ℭourt of the ⅅistrict of ℭolumbia
## PROBATE DIVISION
### Washington, D.C. 20001-2131

Estate of

Clara Maribel Oxlaj-Gonzalez
_____
Deceased

Administration No. 312-07 _____

## WAIVER OF PERSONAL REPRESENTATIVE'S BOND

I, Transito Gonzalez-Chaj _____ , being a competent

☑ adult heir and/or legatee of Clara Maribel Oxlaj-Gonzalez _____ , deceased, or

☐ a creditor of the decedent whose claim in excess of $500.00 has not been barred or discharged,

and being familiar with the petition of Donald N. Sperling _____

for Letters of Administration, do hereby waive protection of any bond so far as my interest in said estate is concerned.



Witness

Signature

SCR-PD 404(f)/Jan. 2000

Notice of Apointment, Notice to Creditors
and Notice to Unknown Heirs

© 2001 WASHINGTON LAW REPORTER COMPANY - Form 908
1001 Connecticut Ave., N.W., #238, Wash., D.C. 20036-5504

# Superior Court of the District of Columbia

## PROBATE DIVISION
### Washington, D.C. 20001-2131

**OC00312-07**

Administration No. _____

Clara Maribel Oxlaj-Gonzalez

**Name of decedent**

_____

_____

_____

**Name and Address of Attorney**

## NOTICE OF APPOINTMENT, NOTICE TO CREDITORS
## AND NOTICE TO UNKNOWN HEIRS

Donald N. Sperling _____ , whose
address(es) (is/are) ___25 West Middle Lane, Rockville, Maryland 20850___
_____ , (was/were) appointed personal
representative(s) of the estate of ___Clara Maribel Oxlaj-Gonzalez___ , who died
on ___January 17, 2007___ (with/without) a will, and will serve (with/without)
Court supervision. All unknown heirs and heirs whose whereabouts are unknown shall enter their
appearance in this proceeding. Objections to such appointment (or to the probate of decedent's will) shall be filed
with the Register of Wills, D.C., 500 Indiana Avenue, N.W., Washington, D.C. 20001, on or before
___10/19/2007___ . Claims against the decedent shall be presented to the
undersigned with a copy to the Register of Wills or filed with the Register of Wills with a copy to the undersigned,
on or before ___10/19/2007___ , or be forever barred. Persons believed to be
heirs or legatees of the decedent who do not receive a copy of this notice by mail within 25 days of its first
publication shall so inform the Register of Wills, including name, address and relationship.

Date of first publication:

___4/19/2007___

_____
Donald N. Sperling

**To be signed by Personal Representative(s)**

301-340-2020

**Telephone number of Personal Representative(s)**

Name of newspaper:

~~The Daily Record~~ DWLR

The Washington Post

**TRUE TEST COPY**

**REGISTER OF WILLS**

SCR-PD 403(b)/Jan. 2000

# *Superior Court of the District of Columbia*

### PROBATE DIVISION

Date: <u>March 22, 2007</u>    Adm. No. <u>312-07</u>

Re:    Estate of <u>CLARA MARIBEL OXLAJ-GONZALEZ</u>

**NOTICE TO PERSONAL REPRESENTATIVES AND THEIR COUNSEL FOR ESTATES OF DECEDENTS DYING ON OR AFTER JULY 1, 1995**

**I. Supervised Personal Representative**

   a) <u>Inventory</u>

   The supervised personal representative must prepare and file the inventory with the court unless excused from doing so pursuant to D.C. Code §20-731. The supervised personal representative may use either the standing or special appraisers as the personal representative deems appropriate. If using the standing appraisers, the personal representative must communicate with the appraiser in the Office of the Register of Wills (202) 879-1494 for the propose of setting a day and time for appraisement if there are assets such as household furnishings, works of art, jewelry, automobiles, etc. to be listed and valued.

   Blank inventory and schedule forms may be purchased from the Washington Law Reporter or any stationary store which sell legal forms. The summary page must be completed in every case.

   NOTE: An "Appraiser" is the person responsible for the values shown on the schedule. Below are listed the Inventory Schedules and the persons authorized to sign them:

   Schedule A – Personal Representative if assessed value used.
              Real Estate Appraiser if appraised value used.

   Schedule B – Personal Representative if value is less than
              $1,000: otherwise standing or special appraisers
              must make the appraisement/

   Schedules
   C,D,E,F   – Personal Representative.

   Schedule G – Special Appraiser (s) required.

-2-

Each schedule must be signed in accordance with above instructions. The attorney of record may not sign as the appraiser. The inventory will not be accepted for filing unless it is accompanied by signed schedules to support the Inventory (Summary and original Affidavits of Publication. (D.C. Code §20-711(a)).

A certificate must accompany the inventory which reflects that there has been mailed or delivered to all interested persons, within the previous 15 days, a copy of the inventory with a notice that the inventory will be filed on or before the stated date.

D.C. Code §§20-704(a) and (b) require that the personal representative mail, by registered or certified mail, a copy of the Notice of Appointment and the General Information Statement to all heirs, legatees, and creditors not later than twenty (20) days after appointment of the Personal Representative.

Within 90 days of appointment, the personal representative must file proofs of publication and a certification indicating that the above-mentioned Notice of Appointment and General Information Statement have been mailed to interested persons, in accordance with SCR-PD 403(b)(3). The certification is included in the inventory or in the waiver of inventory and accounts forms. The certified return receipts must be filed with this office.

b) Account

The first account in a decedent's estate is due within one year and one day of first publication of notice (D.C. Code §20-724(a)(1)). Subsequent accounts are due within nine months after the due date of the first account until the filing and approval of the final account, or the termination of the appointment of the personal representative (D.C. Code §24-724(a)(2). According the SCR-PD 2, all accounts shall be typewritten or machine printed, and shall be on forms prescribed by the court or formats consistent with those forms. Accounting forms may be purchased from the Washington Law Reporter or any store that sells legal forms. Court cost are assessed at the time of the filing of the account and may again be assessed at the time of the filing of the first account and may again be assessed for subsequent accounts should additional assets be received by the estate.

Duty Auditors are available daily to receive new account filings and to answer routine accounting questions. We invite the personal representative or counsel to submit draft accounts to the Duty Auditor before filing in order to receive guidance regarding required documentation to support the account. When the completed account is ready to be filed, the representative or counsel may either call for an appointment with the duty Auditor to review the account, or file it and have it audited in course. In either event, the account will not be accepted for filing unless court costs are paid, and the documentation to support the account is filed therewith.

-3-

After an account has been accepted for filing, representatives and/or counsel are requested to schedule an appointment with the auditor assigned to the case upon receipt of notice for additional information or documentation. No appointment will be needed, and documentation may be given to a clerk in the Auditing Information Office if the representative and/or counsel do not believe it necessary to have further discussion with the auditor. Failure to file requested documentation (requirements) will result in the matter being reported to the court pursuant to SCR-PD 421.

Personal representatives and/or counsel may secure an appointment with an auditor or receive any general information regarding the auditing process by calling auditing information at (202) 879-1485.

c) Waiver of Inventory and Accounts

A Supervised personal representative may not be required to file the inventory and accounts with the court if the estate is eligible to file a Waiver of Inventory and Accounts. Pursuant to D.C. Code §20-731 (1995 Cum. Supp.) Waiver of Inventories and Accounts may be filed in the following circumstances:

1 – If intestate estate, all residuary legatees sign the waivers of inventory and accounts and all preresiduary receipts are filed.

2 – If intestate estate, all heirs sign the waivers of inventory and accounts.

In either event, court cost and affidavits of Publication must accompany the Waiver, or have been paid or filed previously. The filing of a Waiver of Inventory and Accounts converts supervised administrative administration to unsupervised administration.

d) Termination of Appointment of Personal Representative

Termination of appointment may be requested in the account or subsequently by verified petition.

II. Unsupervised Personal Representative

a) Inventory

The unsupervised personal representative must prepare an inventory of assets in the name of the decedent at the time of death and shall deliver or mail the inventory to each interested person with three months of appointment.

-4-

The unsupervised personal representative may file the inventory with the court, but is not required to do so. The inventory must list each item of property owned by the decedent at the date of death with reasonable detail, and indicate the fair market value of each item as of the decedent's date of death and the amount of any encumbrance that may exist with reference to any item.

An unsupervised personal representative may use the court appraisers or may employ any other qualified appraiser and must include the appraiser's name and address with the item or items appraised.

D.C. Code §§20-704(a) and (b) require that the personal representative mail, by registered or certified mail, a copy of the Notice of Appointment and the General Information Statement to all heirs, legatees, and creditors not later than twenty (20) days after appointment of the Personal Representative.

Within 90 days of appointment, the personal representative must file proofs of publication and a certification indicating that the above-mentioned Notice of Appointment and General Information Statement have been mailed to interested persons, in accordance with SCR-PD 403(b)(3). The format for the certification appears in SCR-PD 403(b), or the personal representative may use the Washington Law Reporter form 709. The Certified Return Receipts must also be filed with this office. If court cost were not paid when the case was initiated, they are due at the time of filing this certification.

b) <u>Account</u>

According to D.C. Code §20-734 (1995 Cum. Supp.), an unsupervised personal representative shall account to interested persons for his receipts, disbursements, and distribution of estate asset at reasonable intervals, or on reasonable demand, and may be compelled to account to the court in a proceeding initiated by an interested person following notice and hearing. The format of the account should be consistent with the forms prescribed by the court. See Src---pd 2. Accounting forms may be purchased from the Washington Law Reporter or any store that sells forms.

c) <u>Termination of Appointment of Personal Representative</u>

Unless otherwise ordered by the court, an unsupervised personal representative shall close the estate by filing with the court a certificate of completion in the format prescribed by SCR-PD 426(a). If no Certificate of Completion is filed than the appointment of unsupervised personal representative shall automatically terminate on the date which is 3 years after the appointment of the personal representative or the late expiration of any extension of the appointment granted by the court.

Abbreviated Probate Order

© 2001 WASHINGTON LAW REPORTER COMPANY - Form 902
1001 Connecticut Ave., N.W. 296, Wash. D.C. 20036-5604

# Superior Court of the District of Columbia

## PROBATE DIVISION
### Washington, D.C. 20001-2131

DOCKETED
MAR 2 2 2007

Register of Wills
Clerk of the Probate Division

Estate of

Clara Maribel Oxlaj-Gonzalez _____ Age 24
_____
Deceased

Administration No. 0000312-07

## Abbreviated Probate Order
### (For estates of decedents dying on or after April 27, 2001)

Upon consideration of the petition for (supervised) (unsupervised) abbreviated probate, acceptance and consent of each personal representative, a power of attorney of each non-resident, and a bond, if applicable, in the amount of $ _____ — O — _____ all having been filed herein, it is by the Court this _____ 21st _____ day of _____ March _____ , 2007 ,

ORDERED, that administration of this estate is

☒ (unsupervised)

☐ (supervised) for the following reasons:

☐ Decedent's will directs supervision.

☐ Decedent's will directs unsupervised administration but supervised administration is required for the following reasons: _____

_____

_____

_____

☐ Other _____

_____

_____

_____

and it is further,

ORDERED, that _____ Donald N. Sperling _____

_____

_____ (is) (are) appointed personal representative(s) of the estate

of _____ Clara Maribel Oxlaj-Gonzalez _____ , deceased, and it is further,

ORDERED, that

☒ the Court finds that the decedent died intestate.

☐ the will dated _____ and codicil(s) dated _____ accompanying the petition (is) (are) admitted to probate and record as the last will and testament of the aforesaid decedent, and as an international will where applicable.

☐ that bond heretofore filed in the amount of $ _____ is approved.

☒ bond is not required.

☐ that the said personal representative(s) shall file an additional bond in an amount to be fixed by the Court before accepting assets in excess of the stated amount.

☐ Subject to D.C. Code §20-906, a homestead allowance in the sum of $15,000 is authorized out of the real or personal estate to _____ as the surviving spouse and, if none, to _____ as a custodian of a surviving minor child and to _____ as a dependent child, to be divided equally between each of the children.

☐ Subject to the homestead allowance and as provided in D.C. Code § 20-906, a family allowance in a reasonable sum not to exceed $ 15,000 is authorized out of the personal estate to _____ as surviving spouse and decedent's minor child(ren) whom the decedent was obligated to support and children who were in fact being supported by the decedent, in accordance with law. The homestead and family allowances shall abate equally if applicable estate assets are insufficient to pay both in full.

☐ After payment of the homestead and the family allowance and as provided in D.C. Code § 20-906, tangible personalty or other personalty not exceeding the value of $10,000 is allowed to the surviving spouse and if none, to the decedent's surviving children jointly as exempt property.

☒ subject to any limitation of the will (if decedent died testate), D.C. Code Title 20, or by an order of Court, the personal representative(s) may, in addition to any power or authority contained in the will and to any other common-law or statutory power, properly exercise those general powers as enumerated in D.C. Code Section 20-741, subject to the following limitations which, if the administration is supervised, shall be endorsed on the letters of administration:

_____

_____

_____

_____   JUDGE

cc: Include Attorney of Record and P.R.
Donald N. Sperling
25 West Middle Lane, Rockville, Maryland 20850

Copies mailed, postage prepaid, to parties indicated above on 3/22/67

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## Probate Division
## Washington, D.C. 20001

Administration No.    2007 ADM 000312

## LETTERS OF ADMINISTRATION

To all persons who may be interested in the Estate of

**CLARA MARIBEL OXLAJ-GONZALEZ**                                      , deceased:

Administration of the Estate of the deceased has been granted on    **March 22, 2007**

to    **DONALD N. SPERLING, Personal Representative**

(and the will of the deceased was probated on                                                      ).

This administration  ☐ is    ☒ is not  subject to the continuing supervision of the Court.

The powers of the personal representative  ☒ are not limited    ☐ are limited as follows:

The appointment is in full force and effect as of this date.

**WITNESS:**

DATE:    **March 22, 2007**

Register of Wills
Clerk of the Probate Division

**NOTE:  Document Invalid Without Embossed Court Seal**

Ltrsa.doc Page 1
Created on 5/18/2004 2:28 PM

Jan 29 2007 2:21PM    STEIN SPERLING LP-1    3014454166    p.3

2007 JAN 22 PM 2:41

**GOVERNMENT OF THE DISTRICT OF COLUMBIA • DEPARTMENT OF HEALTH**
**CERTIFICATE OF DEATH**

File number 070000216

| Field | Value |
|---|---|
| 1a. DECEDENT'S LEGAL NAME | CLARA MONIBEL CELAJ GONZALEZ |
| 2. SEX | F |
| 3. DATE PRONOUNCED DEAD | JANUARY 17, 2007 |
| 4. TIME PRONOUNCED DEAD | 0175 |
| 5. SOCIAL SECURITY NUMBER | 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 |
| 6a. AGE | 24 |
| 7. DATE OF BIRTH | October 17, 1982 |
| 8. BIRTH PLACE | Guatemala |

9a. RESIDENCE - STATE: D.C.
9c. CITY, TOWN, OR LOCATION: Washington

10. STREET AND NUMBER AND QUADRANT: 1413 Spring Road, N.W.
10a. APT. NO.
10b. ZIP CODE: 20010
Bc. INSIDE CITY LIMITS: YES

11. EVER IN U.S. ARMED FORCES?: NO
12. MARITAL STATUS AT TIME OF DEATH: Never Married
13. SURVIVING SPOUSE

14. FATHER'S NAME: Mateo Celaj
15. MOTHER'S NAME PRIOR TO FIRST MARRIAGE: Transito Gonzalez Chaj

16a. INFORMANT'S NAME: Fabian Celaj
16b. RELATIONSHIP TO DECEDENT: Brother
16c. MAILING ADDRESS: 1413 Spring Road, N.W. Washington, D.C. 20010

17. PLACE OF DEATH
17a. IF DEATH OCCURRED IN A HOSPITAL / IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL
17c. FACILITY NAME: OFFICE OF THE CHIEF MEDICAL EXAMINER
17d. CITY, TOWN, STATE: WASHINGTON, D.C.
17e. ZIP CODE: 20001

18. METHOD OF DISPOSITION
18a. PLACE OF DISPOSITION: Family Cemetery
Location: Guatemala
18c. DATE OF DISPOSITION: January 16, 2007

20a. NAME AND COMPLETE ADDRESS OF FUNERAL FACILITY: W.H. Bacon Funeral Home, Inc. 3447 14th Street, N.W. Washington, D.C. 20010

21. FUNERAL SERVICE LICENSEE: Wanda C. Bacon
21. LICENSE NUMBER: 887

23. DECEDENT'S EDUCATION
24. DECEDENT OF HISPANIC ORIGIN: Guatemalan
25. DECEDENT'S RACE

26. DECEDENT'S USUAL OCCUPATION: Food Preparer
27. KIND OF BUSINESS / INDUSTRY: Restaurant

**CAUSE OF DEATH**

28. PART I.
a. IMMEDIATE CAUSE: CRUSHING INJURIES OF HEAD, NECK AND TORSO
DUE TO (or as a consequence of):
b.
c.
d.

PART II.

29. WAS AN AUTOPSY PERFORMED?: No
30. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH?: No

32. MANNER OF DEATH: Accident

33. DID TOBACCO USE CONTRIBUTE TO DEATH?: No
34. IF FEMALE: Not pregnant within past year
35. DATE OF INJURY: JANUARY 16, 2007
36. TIME OF INJURY: 2230 HOURS
37. PLACE OF INJURY: STREET
41. INJURY AT WORK?: No

38. LOCATION OF INJURY: 16TH STREET & PARK ROAD N.W.
City or Town: WASHINGTON
State: D.C.

39. DESCRIBE HOW INJURY OCCURRED: PEDESTRIAN
40. IF TRANSPORTATION ACCIDENT, SPECIFY: Pedestrian

41. NAME OF PERSON PRONOUNCING DEATH: MARIE-LYDIE PIERRE-LOUIS, M.D.
42. DATE: JANUARY 17, 2007

43a. CERTIFIER: Medical Examiner
Signature of Certifier: Marie-Lydie Pierre-Louis
43a. Name: MARIE-LYDIE Y. PIERRE-LOUIS, M.D.
43c. DATE CERTIFIED: 1-19-07

43b. ADDRESS OF CERTIFIER: 1910 MASSACHUSETTS AVENUE S.E., WASHINGTON, D.C. 20003

Form DCVH156

---

I CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT COPY OF THE ORIGINAL CERTIFICATE FILED IN THE VITAL RECORDS DIVISION, DISTRICT OF COLUMBIA, DEPARTMENT OF HEALTH.

WARNING: IT IS UNLAWFUL TO MAKE A COPY OF THIS DOCUMENT AND PRESENT IT AS AN ORIGINAL CERTIFICATE OR COPY OF A VITAL RECORD.

DATE ISSUED: January 22, 2007

_Julie Davidson-Randall_
JULIE DAVIDSON-RANDALL
REGISTRAR



**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**OFFICE OF THE CHIEF MEDICAL EXAMINER**
1910 Massachusetts Ave., S.E., Bldg. 27
Washington, D.C. 20003

202-698-9000 (Office)                                                    202-698-9106 (Fax)

April 18, 2007

Melina Perez Halpern, Esq.
Attorneys At Law
Stein, Sperling, Bennett, DeJong
Driscoll & Greenfeig, P.C.
25 West Middle Lane
Rockville, MD 20850-2204

RE: Clara Maribel Oxlaz Gonzalez
OCME# 07-0130

Dear Ms. Halpern:

The Office of the Chief Medical Examiner, Medical Records Department has received your request for medical information on the above named decedent.

___✓___ Enclosed is the information you requested.   ___✓___ Autopsy Report
___ Toxicology Report ___ Proof of Death ___ Other _____.

_____ The medical information you requested is currently unavailable. We will provide you with the documents upon their availability.

_____ Your request is being returned for insufficient information, we are unable to locate the record(s) of a decedent with that name, date and place of death.

_____ Please submit a check or money order made payable to "D.C. Treasurer" in the amount of $ _____.

If we may be of further assistance, please feel free to contact us at (202) 698-9111.

Sincerely,

Karen Glymph
Medical Records Department

Enclosure



# Government of the District of Columbia
## Office of the Chief Medical Examiner

### AUTOPSY REPORT

**CASE NUMBER:** 07-0130

**NAME OF DECEDENT:** CLARA MARIBEL OXLAZ GONZALEZ

**AGE:** 24 YEARS     **RACE:** HISPANIC     **GENDER:** FEMALE

**DATE OF DEATH:** JANUARY 17, 2007 **AUTOPSY DATE:** JANUARY 18, 2007

**AUTOPSY PERFORMED BY:** MARIE-LYDIE Y. PIERRE-LOUIS, MD

**FINAL DIAGNOSES**

I. Crushing Injuries of Head, Neck, Torso and Extremities
   A. Contusions, abrasions, lacerations of body surfaces
   B. Fractures of skull, facial bones, cervical spine, ribs, clavicles,
      Sternum; fracture-dislocation of left shoulder
   C. Lacerations of brain; transection of cervical spinal cord, trachea, main
      bronchi, carotid artery; contusions, lacerations of lungs


**CAUSE OF DEATH:**     CRUSHING INJURIES OF HEAD, NECK AND TORSO

**MANNER OF DEATH:**     ACCIDENT

07-0130
CLARA MARIBEL OXLAZ GONZALEZ

## EXTERNAL EXAMINATION

The body is presented clad. The body is that of a normally developed Hispanic female appearing the stated age of 24. The body weighs 132 pounds and is 59 inches in height. (Body Mass Index: 26.7, overweight). The scalp hair is black, straight, 10 to 12 inches in length. The irides are brown. The palpebral conjunctivae are pale and show no petechial hemorrhages. The external nares and auditory canals are patent. The mouth contains natural teeth in a fair state of repair. The neck shows no furrows and no finger markings. The abdomen is flat. The external genitalia are those of a normally developed, adult female. Rigor mortis is present in the lower extremities. Livor mortis is posterior and purple.

## CLOTHING

Pink sweater, white jacket, pink bra, blue denim jeans, blue underpants. The upper garments are blood soiled. The jacket has a black pattern over the back, the left front, the front and back of the distal region of the left sleeve. Soot is also present focally on the left front of the jacket close to the collar and the zipper at this level is also broken. Golden metallic ring with red and black designs, left 4th finger.

## DESCRIPTION OF INJURIES

BLUNT IMPACT

HEAD AND NECK

A gaping laceration exposing comminuted fractures of the skull and lacerated brain is present over the forehead extending from 4" above and ¼" anterior to the right external auditory canal to 2" above and 2" posterior to the left external auditory meatus. Another 6" laceration involves the left parietal region.

The left side of the face has diffuse pale yellow abrasion and is focally covered with soot. The adjacent posterolateral surface of the neck is also abraded, pale pink to yellow, with a 3¼"x ½" linear laceration. A 1" laceration is at the lateral edge of the left eye. The dorsal surface of the nose, the right cheek, the upper lip and focally the right half of the chin have pale yellow to dark red abrasions. A 2" laceration extends from the right naris, over the right cheek toward the chin. There is a ½" vertical laceration of the lower lip. Blood is in the right ear. There are comminuted fractures of the calvarium and the base of the skull, of both maxillary bones, of the mandible, left of the midline, of the nasal bones. The brain is extensively lacerated, fragmented. The cervical spine is crushed and transected at the level of the 6th – 7th cervical vertebrae. The cervical cord

is transected. The trachea, the main bronchi are torn and transected. The left carotid artery is transected in 2 areas. The left horn of the hyoid bone is fractured and there is diffuse hemorrhage of the strap muscles of the neck and the intrinsic muscles of the larynx. The thyroid gland is focally contused.

## TORSO

The upper chest has several contusion-abrasions, pale red to yellow, extending over the left clavicular region, the left breast, the presternal region, the right breast and lower chest and adjacent abdomen and postero-lateral surface of the torso. A 1¼" x ¾" gaping laceration is over the external third of the left clavicle. There are fractures of the 1st to 10th ribs anteriorly, laterally and posteriorly. The clavicles are fractured in two areas. The sternum is split horizontally at the level of the 4th ribs. There are contusions and lacerations of the lungs in different areas.

BACK: The left side of the back, above the iliac crest has a 4" x 6" brush burn abrasion, covered with soot, that has a reverse "L" shape. Marked hemorrhage is noted in the subcutaneous tissues and the muscles at this level. The abrasion is located 36½" above the left heel. It is covered with soot. A 2" and a 3" horizontal dark red abrasions are on the left upper back. A few pale red abrasions are scattered over the upper back. The left chest cavity has 200 cc of fluid and clotted blood, the right 400 cc.

## UPPER EXTREMITIES

LEFT: The left arm has several 1/16" – ¼" x ⅜" pale red abrasions on its posterolateral surface. At the level of the axilla, anteriorly, there are several yellow/pale red abrasions covering a 3½" x 2½" area. The back of the forearm has a 3 x ¾" dark red contusion with a few abrasions. Anteriorly the forearm has several 1/16" to ½" x 1/6" pale red abrasions. The dorsal surface of the wrist and the hand has several ½" x ⅜" to 1"x1" dark red contusion abrasions. There is fracture-dislocation of the shoulder joint.

RIGHT: The lateral surface of the right arms is diffusely contused. The posterior surface of the right arm and adjacent forearm have numerous pale red abrasions, 1/32" – ¼" x ½". A 2" x ½" dark red contusion is on the ulnar border of the right forearm. The dorsal surface of the right hand is diffusely contused with several 1/32" – ⅛" pale red abrasions. The radial surface of the right hand has a 1"x ¼" and two ¼" and ⅜" pale red abrasions.

## LOWER EXTREMITIES

RIGHT: The dorsal surface of the right foot and the adjacent external malleolar region are contused (dark red 6"x3") and have a few ⅛" – ¼" superficial abrasions.

07-0130
CLARA MARIBEL OXLAZ GONZALEZ

A few ¼" x ⅜" dark red contusions are over the right skin. The right knee has a ⅜" x ¼" and a 1" x ⅝" pale red contusions.

The lateral surface of the right thigh has a 5" x 4" contusion abrasion extending from 22 ¼" to 26" above the heel. The lateral edges of the injury are abraded and the posterior abrasion has a 1" x ¼" superior laceration. The superior edge also has two ½" x ¼" and ¾" abrasions. 27" above the heel is another ¼" dark red abrasion. Minimal hemorrhage is present in the subcutaneous tissues at the site of this injury.

Soot is present over the right heel and the right sole focally.

LEFT: The dorsal surface of the left foot is covered with soot and has a 1½" linear dark red abrasion. The left knee has a ½" x ⅝" dark red abrasion. The left heel is covered with soot. The posterior surface of the thigh shows a 1¾" dark red abrasion 21¾" above the heel, a 2½" x 2¼" dark red contusion with a 1¾" linear abrasion 23¾" above the heel.

## INTERNAL EXAMINATION

BODY CAVITIES: The internal organs have their usual anatomic relationships.

CARDIOVASCULAR SYSTEM: The heart weighs 200 grams. The coronary arteries arise normally, follow normal courses, and display no significant atherosclerotic changes. Serial coronal sections through the myocardium reveal neither old scars nor recent infarcts. The left ventricular myocardium is 1 cm thick, the right 0.2 cm. The left ventricular cavity measures 2.5 x 2 cm, the right 3.5 x 5 cm. The cardiac valves and chambers are unremarkable. The aorta is of usual circumference throughout its length. The abdominal aorta shows a few patchy atherosclerotic plaques.

RESPIRATORY SYSTEM: The combined weight of the lungs is 370 grams. The external surface is smooth. On section, the pulmonary parenchyma is focally hemorrhagic and shows no foci of consolidation. There is bloody mucus within the large airways. There are no pulmonary emboli.

HEPATOBILIARY SYSTEM: The liver weighs 1090 grams. Its borders are sharp. Its capsule is intact. On section, the parenchyma is dark brown and shows no fibrotic and no cirrhotic changes. The gallbladder contains approximately 15 cc of thick green bile. No stones are found.

PANCREAS: The pancreas is grossly unremarkable.

07-0130
CLARA MARIBEL OXLAZ GONZALEZ

GASTROINTESTINAL SYSTEM:  The stomach contains approximately 20 cc of thick tan fluid in which neither tablets nor pills are found.   After washing, the esophageal, gastric, and duodenal mucosae present neither ulcers nor tumors.  The remainder of the gastrointestinal tract is unremarkable.

GENITOURINARY SYSTEM:  The combined weight of the kidneys is 180 grams. Their capsules strip easily to reveal smooth cortical surfaces.  On section, the corticomedullary tissue and the calyceal system are unremarkable, bilaterally.  The ureters follow normal courses and open into the bladder which contains approximately 180 cc of light yellow urine.  Uterus, tubes and ovaries are grossly unremarkable.

HEMIC AND LYMPHATIC SYSTEMS:  The spleen weighs 170 grams.  It is unremarkable grossly.

ENDOCRINE SYSTEM:  The pituitary, thyroid, and adrenal glands are unremarkable.

NECK:  Sections through the tongue reveal no focal contusion.  The neck is dissected in a layer-by-layer fashion.  The thyroid and the cricoid cartilages are intact.  The larynx is opened posteriorly.  The vocal cords are thin and pliable.

HEAD AND CENTRAL NERVOUS SYSTEM: See "Description of Injuries".   The brain weighs 950 grams.

MUSCULOSKELETAL SYSTEM:  See "Description of Injuries:

**MICROSCOPIC EXAMINATION**

Sections are retained.

**TOXICOLOGIC EXAMINATION**

Samples of blood, bile, urine, vitreous fluid, gastric contents and sections of liver and brain are submitted.

_Marie-Lydie P. Pierre, CMD_                                    4.17.07

Marie-Lydie Y. Pierre-Louis, MD                         Date Signed
Chief Medical Examiner

MPL:ypr



**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**OFFICE OF THE CHIEF MEDICAL EXAMINER**
1910 Massachusetts Avenue, S.E., Bldg. 27
Washington, D.C. 20003

Toxicology Laboratory

## TOXICOLOGY REPORT

### CASE IDENTIFICATION

| | | | |
|---|---|---|---|
| Agency: | OCME | Report Date: | 02-08-2007 |
| Agency Number: | 07-00130 | Toxicology Number: | TX07-0082 |
| Name: | GONZALEZ, Clara | ME: | MPL |

### SPECIMEN(S) RECEIVED

Femoral blood, peripheral blood, urine, bile, vitreous, liver, brain, gastric
Date Received:    01-19-2007

### RESULTS

Peripheral blood was analyzed by headspace gas chromatography for the presence of ethanol, acetone, methanol, and isopropanol. The following volatile(s) were detected:
**None were detected**

Femoral blood was screened by enzyme immunoassay for the presence of amphetamines, barbiturates, benzodiazepines, cocaine metabolites, methadone, methamphetamines, opiates, phencyclidine and propoxyphene. The following drug(s) were detected:
**None were detected**

Femoral blood was screened by gas chromatography-mass spectrometry for the presence of basic drugs. The following drug(s) were detected:
**None were detected**

FIONA J. COUPER, Ph.D.
Chief Toxicologist, OCME



# ONGUARD

**Security & Investigative Services, Inc.**

---

## Statement Form

| | |
|---|---|
| **Investigator(s):** | **Sergio Olavarria** |
| **Incident:** | **Traffic Accident** |
| **Date & Time:** | **01/16/07 at 10:30 PM** |
| **Client:** | **Clara Maribel Oxlaj-Gonzalez** |
| **Person Interviewed:** | **Carlos Quintana** |
| **Address:** | **613 Wayne Avenue, Silver Spring, MD 20910-5556** |
| **Telephone:** | **202-486-1028** |

**Statement:**

On 07/11/2007 at 6:10 PM this investigator interviewed Mr. Carlos Quintana in reference to the above accident involving Mrs. Clara Maribel Oxlaj-Gonzalez which occurred on Park Road and 16th Street, NW, Washington, DC.

Mr. Quintana stated that he had already given a complete statement to the police on the night that the accident occurred. He then agreed to speak with me and stated that his wife and he were the only passengers riding in the metro bus which struck Mrs. Oxlaj-Gonzalez and that they did not actually see the bus strike the woman. Mr. Quintana stated that they saw an S4 Metro bus that was headed South on 16th Street and it was waiting at Park Avenue. The bus blinked its lights and let the H8 bus make its left turn. Mr. Quintana and his wife both heard a sound and looked back, because the driver was concerned about what had happened, and they saw the body. Mr. Quintana called the police.

Mr. Quintana further stated that the driver of the S4 bus was very upset and was actually crying while sitting behind the wheel of his bus. Mr. Quintana believes that the driver of the S4 bus probably had the best view of the accident since he was right there at the corner.

Mr. Quintana and his wife left shortly after the police arrived and took their statements. He never saw the driver of the S4 bus speaking with the driver of the bus that struck the woman. Mr. Quintana also stated that there were three or four other passengers in the S4 bus that may have witnessed the bus striking the woman. He stated that the other passengers got out of the S4 bus and walked over to the body. One of the passengers was a relatively young black male but he could not remember any other details regarding the passengers. Mr. Quintana has no additional witness information.

**Meliha P. Halpern**

| | |
|---|---|
| **From:** | Michelle M. Carlisi |
| **Sent:** | Wednesday, January 24, 2007 9:48 AM |
| **To:** | Jolie S. Deutschman |
| **Cc:** | Meliha P. Halpern; Fred A. Balkin |
| **Subject:** | Wrongful Death Article from the Washington Post |

# Metrobus Strikes, Kills Pedestrian in NW

By <u>Clarence Williams</u>
Washington Post Staff Writer
Wednesday, January 17, 2007; Page B04

A woman died late last night after being struck by a Metrobus at a major intersection in the Mount Pleasant area of Northwest Washington, D.C. police said.

An H8 bus heading north on 16th Street NW about 10:25 p.m. hit the woman as it turned left onto Park Road, said Metro spokeswoman Joanne Ferreira. The woman, who had not been identified late last night, was crossing Park Road, Ferreira said. She died at the scene.

Five passengers were on the bus at the time; none were injured.

Police shut down traffic along 16th Street as the investigation began. Ferreira said the driver, who has a little more than a year's experience at Metro, was to be tested for drugs and alcohol, which is routine in such circumstances.

## Who's Blogging?

Read what bloggers are saying about this article.

- **American Dream News**

○ <u>Full List of Blogs (1 links) »</u>

Most Blogged About Articles
○ <u>On washingtonpost.com</u> | <u>On the web</u>


POWERED BY
**Technorati**

Save & Share Article | What's This?

| | |
|---|---|
| <u>Digg</u> | <u>Google</u> |
| <u>del.icio.us</u> | <u>Yahoo!</u> |
| <u>Reddit</u> | <u>Facebook</u> |

Michelle M. Carlisi
Paralegal
Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C.
25 West Middle Lane
Rockville, MD 20850
(301) 738-2222 main
(301) 838-3289 direct

1/24/2007

# washingtonpost.com



Advertisement

**CORRECTION TO THIS ARTICLE**
A Jan. 18 District Briefing item in the Metro section misidentified a
woman who died late Jan. 16 after being struck by a bus. D.C. police
said 24-year-old Carla Gonzalez, 24, died after being hit by a Metro bus
in the Mount Pleasant area. A D.C. government official had earlier
mistakenly identified the woman as Clauria Oxlal, 23.

# DISTRICT BRIEFING

Thursday, January 18, 2007; B04

## DISTRICT COURT

### Md. Man Sent to Prison on Child Sex Charges

A federal judge in Washington sentenced a registered
sex offender yesterday to a 66-month prison term for possessing child pornography and attempting to
entice a minor into sexual activity.

Larry Poole, 43, of Westminster, Md., was on probation for a 2004 Maryland conviction for child abuse
when he was caught in an undercover sting, prosecutors said. Poole engaged in sexually explicit
discussions in computer chats with a D.C. police officer posing as a 13-year-old girl, prosecutors said.
Police then set up a meeting, where Poole was arrested.

Prosecutors said that authorities found child pornography in a search of Poole's residence after his arrest
in July. He pleaded guilty to charges a few months later and was sentenced yesterday by U.S. District
Judge Paul L. Friedman.

Friedman ordered that Poole be put on five years of supervised release once he gets out of prison; during
that time, he is barred from using the Internet without written approval. The judge also ordered Poole to
register as a sex offender for 25 years.

## MOUNT PLEASANT AREA

### Woman Killed by Bus Identified; Inquiries Opened

The woman who died late Tuesday after being struck by a Metro bus in the Mount Pleasant area was
identified yesterday, as multiple investigations into the incident were initiated.

Clauria Oxlal, 23, who lived in the Columbia Heights area, died at the scene after a bus on the H8 route
turned left onto Park Road from 16th Street NW about 10:25 p.m. Tuesday, said D.C. Council member
Jim Graham (D-Ward 1). Oxlal had been crossing Park Road.

"Metro, the police department and the [city] Department of Transportation are all investigating this to
find the answers to the questions that we all have on our mind," said Graham, who represents the area
where the accident occurred and is also a member of the board that oversees Metro.

Graham said that signs at the intersection prohibit left turns onto Park Road from northbound 16th Street

but that buses are exempt from the law. No such exception was noted at the corner, he said.

There could be a problem with the signs, Graham said.

## HEALTH DEPARTMENT

### Agencies Are Reorganized to Improve Service

District Health Director Gregg A. Pane has consolidated several agencies within his $1.8 billion, 1,300-employee department, in part "to better coordinate and integrate" services. His move, announced yesterday, cuts the number of health department administrations from 11 to seven while creating a center for health data and planning.

Two of the department's key agencies, dealing with HIV-AIDS and addiction prevention and recovery, are looking for new leaders because their previous directors were not reappointed by the Fenty administration. Pane recently designated himself interim director of the renamed HIV/AIDS Administration and said a national search would begin for a successor.

-- Susan Levine

© 2007 The Washington Post Company

Ads by Google

Stryker Instruments
A leader in making instruments that make surgery more efficient.
www.Stryker.com

Firearms Training in MD
Certified NRA Firearms Instructors Concealed Carry, Pistol Training
www.firearmstraininggroup.com

FLU ARMOUR™
Leader in Bird Flu Prep Supplies Seen on CNN, MSNBC, ABC News
FLUARMOUR.com

# washingtonpost.com

# Metro Chief Vows Better Bus Safety

Drivers Seen Speeding, Running Lights

By Lena H. Sun and Nick Miroff
Washington Post Staff Writers
Sunday, February 25, 2007; A01

Metro's new general manager is taking steps that amount to the most
dramatic changes in bus operations in a generation, saying safety must be
improved and public confidence regained after four pedestrians were
recently struck and killed by buses.

John B. Catoe Jr., who took over Metro last month, detailed the measures
last week in interviews with The Washington Post and sent a memo to all
bus drivers stressing that "the cost of these tragedies . . . has been too high.
We have to put an end to it now."

His words and actions came as a reporter rode some of Metrobus's busiest
routes for a day and observed drivers speeding, running red lights, talking
on cellphones and engaging in many other unsafe practices that some bus
riders and pedestrians call typical.

Yesterday evening, a stroller carrying a small child was reportedly struck by
a Metrobus in Southwest Washington. The 3-year-old was seen at a hospital
and released, D.C. police said. The stroller, being pushed by the child's
mother, was reportedly hit by the rear of the bus at Half and O streets about
5 p.m., but officials were sifting conflicting accounts, a Metro spokeswoman
said.

It was the latest example of the difficulties of driving a bus through
crowded, often chaotic, city streets. Speaking last week, Catoe said he
would institute practices that are standard elsewhere to get a firmer grip on
the behavior of Metro's drivers, more than half of whom have less than three
years' experience.

Advertisement

Today's
working
professionals

WALDEN
UNIVERSITY
A higher degree.
A higher purpose.

CLICK HERE
TO LEARN MORE

He said he will begin to monitor drivers -- knowing when they are stopped for speeding, drunken
driving and other violations while on duty -- by coordinating with the motor vehicle departments of
Maryland, Virginia and the District. Although many transit agencies already do this, Metro supervisors
have no way of knowing whether operators have broken the law unless drivers tell them or the violations
are caught on police cameras.

Catoe said he also wants to significantly boost the number of street supervisors who oversee driver
behavior and end the practice of requiring new operators to start on a part-time basis.

And Catoe, who has more than two decades of experience running major bus systems, plans to
consolidate all bus operations under a single person. As it stands, the bus chief is responsible for service
on a system that provides 443,000 passenger trips a day but has no control over hiring drivers or
scheduling routes. Those duties are handled by different departments.

In his memo to drivers, Catoe warned that commuters were questioning their abilities, a perception he said wasn't accurate. But, he wrote, "we can be expected to be looked at closely and critically for quite some time."

Nonetheless, bad driver behavior persisted in plain view a day after the memo went out. Drivers went through red lights, blocked intersections and split their attention between watching traffic signals and talking on cellphones. On streets with 30 mph speed limits, some operators exceeded 40. Others blocked roads and burrowed their way into traffic by wielding their vehicles like giant wedges. Chatty drivers talked to passengers instead of watching the road.

"I'm watching for somebody to fall out of the sky in front of my bus," one driver on the H8 route told his riders, turning his head to face them as he rolled along.

"I'm going to take it easy, take it slow," another operator told her passengers. "I'll be getting an hour of overtime today."

Maneuvering a Metrobus in city traffic is no easy assignment. Drivers must steer their 40-foot behemoths through an urban obstacle course of distracted drivers, oblivious pedestrians and icy roadways. Cars pull out with no warning. Pedestrians stream through intersections, walking inches from buses' wheels. The job itself seems to demand an impossible set of contradictions: courteousness but little talking, promptness but no speeding.

Many riders said they thought operators were doing the best they could under difficult circumstances.

"Pedestrians cross against the light all the time," said Joaquin Miguel, a cook who lives in the District and rides the 70 line along Georgia Avenue NW. "They don't pay attention."

Jack Requa, Metro's bus chief, said there is no excuse for drivers who speed, run red lights or talk on cellphones. Those drivers will face immediate discipline, he said. At the same time, he said, heavy traffic might cause buses to block intersections even though they entered them legally. Congested streets also make it difficult to merge back into traffic from bus stops. "If you're totally 100 percent polite, you may never move," he said.

Jackie Jeter, president of the Amalgamated Transit Workers Union Local 689, which represents about 7,000 of Metro's 10,000 employees, said passengers have tried to intimidate operators by snapping their photos with cellphones. In a few cases, she said, riders have accused operators of being murderers.

"These accidents occur, and every operator would give anything for it not to happen," she told reporters last week.

Federal transit officials say that, nationwide, the number of bus accidents that result in pedestrian deaths each year is relatively small.

For the three fiscal years that ended June 30, 2006, Metrobus had five pedestrian fatalities.

The New York City transit system, where buses travel three times as many miles a year as Metrobuses, had one pedestrian fatality in that time frame. The Los Angeles Metro bus system, which is about twice the size of Metrobus, had seven fatalities in that period, according to federal officials.

Drivers are not always at fault when pedestrians are killed by buses. For instance, a man was killed in an

early-morning collision in May when he walked into the path of a bus heading south on Indian Head Highway in Charles County. In the three accidents that have happened this year, one operator is on paid leave pending the outcome of a District police investigation, another has been terminated, and a third has been charged with two counts of negligent homicide.

Metro's bus system, which includes 1,499 vehicles and about 2,300 drivers, has long been overshadowed by the celebrated subway, which carries tourists and professionals and draws congressional attention.

Officials have made significant improvements by buying new buses and installing SmarTrip fareboxes and devices to pinpoint bus locations. But service remains troubled by outdated operations, underinvestment and an unresponsive bureaucracy, industry experts have said.

Another problem is the relative inexperience of drivers. Industry experts say a bus driver needs three years of driving to become fully seasoned. At Metro, because of a high number of recent retirees, 52 percent of operators have less than three years experience. As recently as 1998, 10 percent of Metrobus drivers would have fit that description; by 2000, the number had risen to one-third.

Metro practice also encourages the most experienced drivers to work on the least-used routes by allowing operators with the most seniority to have first choice in choosing where and when they drive. In many cases, they do not pick the highest-ridership lines, such as those along major arteries in the District or ones that travel through higher crime areas. As a result, less-experienced drivers can end up operating routes with the biggest challenges.

Of the three recent fatal incidents, two drivers had less than two years' experience.

In his memo, Catoe urged bus operators to focus on the basics and safety, promised extra supervisors and training and said schedules would be adjusted, if necessary, even if that delays service. He also has ordered radar guns so street supervisors can keep a closer eye on speeding.

Metrobus has 72 supervisors assigned to the streets to monitor schedules and safety, but Catoe said the system needs at least double that number. During the day-long tour, only one supervisor, posted at the site of one of the recent collisions, was spotted.

Catoe also wants to get rid of a policy that requires all drivers to start as part-timers, a rule originally designed to cut costs but one that officials have criticized. "We are not attracting a broad enough base of applicants because of that requirement," Catoe said.

Starting salaries for drivers are about $15 an hour.

Discipline is also a concern, Catoe said. Bus operators with more than three preventable accidents within a year's time are automatically fired. Metro considers an accident preventable if the operator failed to do everything possible to avoid the collision.

But operators have complained about favoritism, and Catoe said his discussions with managers and operators lead him to believe that enforcement is inconsistent. "We should have a process that has standards for termination due to accidents and standards for terminations not related to accidents," he said.

Metro has no computerized way to review operators' driving records to spotlight potential safety issues, nor is there sufficient attention given to tracking Metrobus accident patterns to spot trends, Catoe added.

Metro officials have known the dangers of the intersection at Seventh Street and Pennsylvania Avenue NW, where Sally Dean McGhee and Martha Stringer Schoenborn were struck by a Metrobus on Feb. 14. That accident was the eighth in two years at that intersection, but previous discussions between city and Metro officials went nowhere.

Two days after that accident, District transportation officials installed three new signs on traffic lights for vehicles heading northbound on Seventh Street. "Turning traffic must yield to pedestrians," the black-and-white signs say. City officials are also considering a left-turn arrow for vehicles turning onto westbound Pennsylvania Avenue, where the two women were killed as they walked in the crosswalk.

*Staff writers Keith L. Alexander, Jerry Markon, Martin Weil and Clarence Williams and staff researcher Meg Smith contributed to this report.*

© 2007 The Washington Post Company

**Ads by Google**

**Satellite Maps**
Download free satellite maps. Amazing free download. Get it now.
Free.Satellite.Maps.Googlepages.com

**Alabama Maps**
Maps of Alabama. Alabama Bureau of Tourism.
www.800alabama.com

**Capitol Plaza**
Capitol Plaza - Topeka Check Hotel Specials & Packages !
www.CapitolPlazaHotelTopeka.com

# Metro Bus Strikes And Kills Pedestrian



**Written by Dave Statter**
***9NEWS NOW***
Created:1/17/2007 8:28:36 PM
Last Updated:1/20/2007 10:37:50 AM

Washington, DC (WUSA) -- Did a missing sign play a role in the death of a pedestrian Tuesday night? That is one question surrounding the Metro bus accident that left a woman dead.

The accident happened as the bus was making a left turn from Northbound 16th Street onto Westbound Park Road. Signs at the intersection indicate that no vehicles are allowed to make the turn.

Mayor Adrian Fenty, who grew up near the intersection, visited the scene today and said even he was confused by the signs that Metro bus drivers seem to ignore.



It turns out that under the "No Left Turn" sign there should have been a second sign reading "Ex second sign was not replaced after a previous accident

Two hours after the Mayor left 16th Street, signs allowir put up by the DC Department of Transportation.

DC Police say the investigation is still underway and nc Metro bus driver. Police expect to present the facts of tl States Attorney for the District of Columbia.

**Related Video** 📹
Dave Statter Reports

📄 **E-mail This Story**
🖨 **Print This Story**
📱 **Get Videos For Your Pod**
⚠ **Send Us Your Photos & Videos**
**XML▶ Get Our Headlines**

**Bookmark This Story**

Google **Google**            Y! **Yahoo!**

**Digg**                      **Technorati**

**del.icio.us**               **Facebook**

**Reddit**

---

**Related News From The Web**
Latest headlines by topic:
• Black Entertainment
• Isaiah Washington
• Katherine Heigl

Powered by Topix.net

# Earnings Statement

**ADP**

*TRAVELODGE*
*A SHAR CON MANAGED HOTEL*
*1917 BLADENSBURG ROAD, N.E.*
*WASHINGTON, DC 20002*

Period Ending:     04/08/2006
Pay Date:          04/14/2006

**CLARA GONZALEZ**
**1445 OGDEN STREET**
**# 220**
**WASHINGTON, DC 20010**

Taxable Marital Status:   Married
Exemptions/Allowances:
  Federal:        4
  DC:             4

Social Security Number: XXX-XX-7645

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular  | 7.0000 | 47.50 | 332.50 | 1,995.00 |
| **Gross Pay** | | | **$332.50** | 1,995.00 |

| Other Benefits and Information | this period | total to date |
|--------------------------------|-------------|---------------|
| 2 | 332.50 | |

| Deductions | Statutory | | |
|------------|-----------|--|--|
| | Social Security Tax | -20.61 | 123.69 |
| | Medicare Tax | -4.82 | 28.93 |
| | DC State Income Tax | -0.25 | 4.68 |
| | **Net Pay** | **$306.82** | |

Your federal taxable wages this period are $332.50

©2001 Automatic Data Processing, Inc.

▽ TEAR HERE

**Earnings Statement**                                    ADP

TRAVELODGE
A SHAR CON MANAGED HOTEL
1917 BLADENSBURG ROAD, N.E.
WASHINGTON, DC 20002

| Period Ending: | 03/11/2006 |
|---|---|
| Pay Date: | 03/17/2006 |

Taxable Marital Status:   Married
Exemptions/Allowances:
  Federal:        4
  DC:             4

**CLARA GONZALEZ**
**1445 OGDEN STREET**
**# 220**
**WASHINGTON, DC 20010**

Social Security Number: XXX-XX-7645

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 7.0000 | 45.50 | 318.50 | 1,253.00 |
| Gross Pay | | | $318.50 | 1,253.00 |

| Other Benefits and Information | this period | total to date |
|---|---|---|
| 2 | 318.50 | |

| Deductions | Statutory | | |
|---|---|---|---|
| | Social Security Tax | -19.75 | 77.69 |
| | Medicare Tax | -4.62 | 18.17 |
| | DC State Income Tax | | 0.72 |
| | Net Pay | $294.13 | |

Your federal taxable wages this period are $318.50

© 2000 Automatic Data Processing Inc.

◁ TEAR HERE

# KESHAV ENTERPRISE INC. T/A MOTEL 6

8768

| Employee | | | | | SSN | Status (Fed/State) | Allowances/Extra |
|---|---|---|---|---|---|---|---|
| Oxlas c Clara, 1445 Ogdan St # 220, Washington, DC 20010 | | | | | ***-**-7645 | Married/Single | Fed-2/0/DC-0/0 |
| | | | | | | Pay Period: 07/02/2006 - 07/15/2006 | Pay Date: 07/21/2006 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Regular Rate | 33.50 | 7.00 | 234.50 | 234.50 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Social Security Employee | -14.54 | -14.54 |
| Medicare Employee | -3.40 | -3.40 |
| DC - Withholding | -6.00 | -6.00 |
| | -23.94 | -23.94 |

| Net Pay | 210.56 | 210.56 |
|---|---|---|

| Paid Time Off | YTD Used | Available |
|---|---|---|
| Vacation | 0.00 | 0.00 |

KESHAV ENTERPRISES,INC., 6711 GEORGIA AVE NW, WASHINGTON, DC 20012, Tel 202-722-1600, Fex 202-723-3979 202-722-1600, MOTEL 6

# KESHAV ENTERPRISE INC. T/A MOTEL 6

8798

| Employee | | | | | SSN | Status (Fed/State) | Allowances/Extra |
|---|---|---|---|---|---|---|---|
| Oxlas c Clara, 1445 Ogdan St # 220, Washington, DC 20010 | | | | | ***-**-7645 | Married/Single | Fed-2/0/DC-0/0 |
| | | | | | | Pay Period: 07/16/2006 - 07/29/2006 | Pay Date: 08/04/2006 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Regular Rate | 80.00 | 7.00 | 560.00 | 794.50 |
| Overtime Hourly Rate 1 | 2.50 | 10.50 | 26.25 | 26.25 |
| | | | 586.25 | 820.75 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Federal Withholding | -23.98 | -23.98 |
| Social Security Employee | -36.35 | -50.69 |
| Medicare Employee | -8.50 | -11.90 |
| DC - Withholding | -27.00 | -33.00 |
| | -95.83 | -119.77 |

| Net Pay | 490.42 | 700.98 |
|---|---|---|

| Paid Time Off | YTD Used | Available |
|---|---|---|
| Vacation | 0.00 | 0.00 |

KESHAV ENTERPRISES,INC., 6711 GEORGIA AVE NW, WASHINGTON, DC 20012, Tel 202-722-1600, Fex 202-723-3979 202-722-1600, MOTEL 6

# KESHAV ENTERPRISE INC. T/A MOTEL 6

8861

| Employee | | | | | SSN | Status (Fed/State) | Allowances/Extra |
|---|---|---|---|---|---|---|---|
| Oxlas c Clara, 1445 Ogdan St # 220, Washington, DC 20010 | | | | | ***-**-7645 | Married/Single | Fed-2/0/DC-0/0 |
| | | | | | | Pay Period: 08/27/2006 - 09/09/2006 | Pay Date: 09/01/2006 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Regular Rate | 52.28 | 7.00 | 365.96 | 1,720.46 |
| Overtime Hourly Rate 1 | 3.48 | | | 62.79 |
| | | | 365.96 | 1,783.25 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Federal Withholding | -13.87 | -59.83 |
| Social Security Employee | -22.69 | -110.56 |
| Medicare Employee | -5.31 | -25.86 |
| DC - Withholding | -12.00 | -73.00 |
| | -53.87 | -269.25 |

| Net Pay | 312.09 | 1,514.00 |
|---|---|---|

| Paid Time Off | YTD Used | Available |
|---|---|---|
| Vacation | 0.00 | 0.00 |

KESHAV ENTERPRISES,INC., 6711 GEORGIA AVE NW, WASHINGTON, DC 20012, Tel 202-722-1600, Fex 202-723-3979 202-722-1600, MOTEL 6

FILE COPY

Metropolitan Police Department, Washington D.C.

TRAFFIC ACCIDENT REPORT

Complaint Number: 07-007-577

Midname: Mobile Crime

**1. DATE (OF ACCIDENT):** 01/16/2007

**2. TIME:** 2239 hrs

**3. DAY OF WEEK:** Tuesday

**4. DATE OF THIS REPORT:** 01/17/2007

16th Street & Park Rd N.W.

at intersection

Upp. Ach

5505 Bond Street, Capitol Heights, Maryland 20743

**Driver #1** Doe, Jane

1520000093300AD

Bus    Otto    1999    White    B40995-DC    1VHJ6897S7V6033    10/05/75

WMATA    600 5TH Street N.W. 20001    587

Doe, Jane

**5. TYPE OF ACCIDENT:** X Fatality ☐ Injury ☐ Prop. Damage Only ☐ Hit and Run ☐ Pedestrian

**R. DISTRICT:** 3D    **P.R.A.:**    **10. NO. VEHICLES INVOL:** 1    **11. NO. INJURED PERSONS:** 1

**12. REPORT TAKEN ON SCENE:** ☐ NO ☒ YES ☐ NO

Jan 29 2007 2:16PM    STEIN SPERLING LP-1    3014454166    p.8



The preliminary investigation reveals that the Pedestrian was waiting Northbound on the West sidewalk when she then attempted to cross Park Road Northwest. It is unknown at the time of this waiting if the Pedestrian was looked within the marked crosswalk area. V1 was traveling Northbound on 16th Street and while on a green traffic signal, negotiated a left turn at the intersection of 16th and Park Rd and collided with the Pedestrian.

The Pedestrian was knocked to the ground from the initial impact. V1's right side tire and vehicle undercarriage passed over the Pedestrian's body before it came to a stop. The Pedestrian's injuries sustained proved fatal.

This case is under investigation by Detective Wayne Washington of the Major Crash Investigations Unit

61 box 99, V1 made a left turn in violation of a posted No Left Turn sign.

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | | |
|---|---|---|
| Donald N. Sperling, Esq., Personal | * | |
| Representative of the Estate of Clara | * | |
| Maribel Oxlaj-Gonzalez, Deceased | * | |
| | * | Case No.: 1:07-cv-00557 |
|     Plaintiff | * | Judge Colleen Kollar-Kotelly |
| | * | Scheduling Conference: August 6, 2007 |
| v. | * | |
| | * | |
| Washington Metropolitan Area Transit Authority | * | |
| | * | |
|     Defendant | * | |

## RULE 26(a)(1) INITIAL DISCLOSURE STATEMENT

COMES NOW the Plaintiff Donald N. Sperling, Esq., Personal Representative of the Estate ("the Estate") of Clara Maribel Oxlaj-Gonzalez ("Plaintiff's Decedent"), and Legal Representative of the Estate, by and through counsel, and for his initial disclosure statement states as follows (terms in italics are terms defined in the Plaintiff's Complaint herein):

(A)    **The name, and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information:**

1) Donald N. Sperling, Personal Representative and Legal Representative of the Estate – how the Collision occurred, and the extent of her injuries, discomfort and damages and her loss of future income, power of attorneys signed by the survivors of Plaintiff's Decedent, and the establishment of the Estate in the Probate Division of the District of Columbia Superior Court.

2) Acie Inge – how the Collision occurred, the extent of his training and experience to drive the *Defendant's Vehicle*, his knowledge of the *Intersection*, the injuries caused to the *Plaintiff's Decedent*, her pain & suffering and her visible condition following the Collision.

3) Washington Metropolitan Area Transit Authority-The Defendant has knowledge of how the collision occurred, the identity, training and experience of its bus driver (Acie Inge), its knowledge of the Intersection, its actions (or omissions) in maintaining the signage at the *Intersection* and/or its contact with the District of

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL,
& GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

Columbia regarding the signage, and the result of its investigation finding its driver to have been at fault in causing the Collision.

4) Detective Wayne Washington, Major Crash Investigative Unit, and other as-yet unidentified employees of the Metropolitan Police Department, 6001 Georgia Avenue, N.W., Washington, D.C. 20011, 202-576-6745, has knowledge of how the Collision occurred, the layout of the Collision scene, and the investigation of the Collision, the investigation of the Collision and any reconstruction of the Collision conducted by the Department. The District of Columbia has yet to provide a copy of their reconstruction report.

5) Carlos Quintana, 613 Wayne Avenue, Silver Spring, Maryland 20910, 202-486-1028, was an eyewitness to the Collision. A copy of his statement to Plaintiff's investigator Sergio Olivarria, On Guard Security and Investigative Services, Inc., 15713 Crabbs Branch Way, Suite 160, Rockville, Maryland 20855, is attached.

6) Marie-Lydie Y. Pierre-Louis, M.D., District of Columbia Medical Examiner's Office, 1910 Massachusetts Avenue, S.E., Building 27, Washington, D.C. 20003, conducted the medical examination and filed the Certificate of Death, and has knowledge as to the injuries sustained by the Plaintiff's Decedent in the Collision, and the causes of death, her physical condition at death, and any conscious pain and suffering sustained by Plaintiff's Decedent following the Collision.

7) Fiona J. Couper, Ph.D., District of Columbia Medical Examiner's Office, 1910 Massachusetts Avenue, S.E., Building 27, Washington, D.C. 20003, conducted the post-mortem Toxicology study on Plaintiff's Decedent and issued a Toxicology Report indicating that no drugs or volatiles were detected in the Plaintiff's Decedent.

8) The following family members of Plaintiff's Decedent have personal knowledge as to the Plaintiff's character, personality, upbringing, development and life history, as well as the level of material and non-material support given by her to each of them during her lifetime:

  i. Mrs. Transito Gonzalez-Oxlaj (mother)
  ii. Mr. Mateo Oxlaj-Gonzalez (father)
  iii. Tomasa Oxlaj-Gonzalez (sister)
  iv. Nicolasa Oxlaj-Gonzalez (sister)

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL,
& GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

     v.   Yolanda Oxlaj-Gonzalez (sister)
    vi.   Jose Oxlaj-Gonzalez (brother)
   vii.   Domingo Oxlaj-Gonzalez (brother)
  viii.   Floridalma Graciela Oxlaj-Gonzalez (sister)
   ix.   Ilda Ebarista Oxlaj-Gonzalez (sister)
          Canton Chicua
          Quetzaltenango
          Guatemala, C.A.
          011-502-5692-6108 (home)
          011-502-5-716-0488 (cell)

     x.   Fabian Oxlaj-Gonzalez (brother)
   xi.   Ruben Oxlaj-Gonzalez (brother)
   xii.   Manuel Oxlaj (nephew)
  xiii.   Nicolas Oxlaj (nephew)
  xiv.   Jose Oxlaj (nephew)
   xv.   Transito Oxlaj (niece)
          1413 Spring Road Washington, DC  20010
          202-674-6322

9) David Plant, P.E., an engineer retained by the Plaintiff, has conducted/will conduct an investigation/reconstruction of the Collision.  A report will be provided to the Defendants when published.

10) Clarence Williams of the Washington Post wrote a news article describing the Collision which was published on page B04 on January 17, 2007.

11) Lena H. Sun of the Washington Post conferred with Plaintiff's attorneys about possibly doing a news story regarding the Complaint herein being filed.  She and Nick Miroff wrote a news article referencing the Collision.

12) Dave Statter of 9News Now wrote an online report regarding the Collision.

13) Claudia Useda of Univision, Inc., 202-351-8596 conferred with Plaintiff's attorneys about possibly doing a profile of the Plaintiff.

14) Tina Johnson of the Washington Metropolitan Area Transit Authority, 600 Fifth Street, N.W., Suite 500, Washington, D.C.  20001, 202-962-1234 is a claims adjustor who was assigned to Plaintiff's claims.  The extent of her knowledge of pertinent facts is unknown.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL,
& GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

15) Miguel Almaguer, WRC-TV News Department WRC-TV (local NBC affiliate) News aired a report regarding the Collision in which Emeka Moneme, the Director of the District of Columbia Department of Transportation and D.C. Mayor Adrian Fenty spoke about the dangerousness of the *Intersection* and the error in the signage regarding the left turn made by the *Defendant's Vehicle*. Among other things, Mr. Momene was quoted as saying that the "except buses" sign had been missing for "months". The report showed that the "except buses" sign had been replaced after the Collision. D.C. Council Member Jim Graham also appeared. The piece was reported by Miguel Almaguer of NBC News and aired January 17, 2007 at 5:14 p.m.

16) D.C. Mayor Adrian Fenty, John A. Wilson Building, 1350 Pennsylvania Avenue, N.W., Washington, D.C. 20004, 202-727-2980. See item #15.

17) D.C. Council Member Jim Graham, John A. Wilson Building, 1350 Pennsylvania Avenue, N.W., Suite 105, Washington, D.C. 20004, 202-724-8181. See item #15.

18) D.C. Department of Transportation Director Emeka Moneme, 2000 Fourteenth Street, N.W., Sixth Floor, Washington, D.C. 20009, 202-673-6813. See item #15.

19) Wanda C. Bacon, W.H. Bacon Funeral Home, Inc., 3447 14th Street, N.W., Washington, D.C. 20010, buried the Plaintiff's Decedent and has accompanying knowledge of her condition following the Collision.

20) The employers referenced below have knowledge of her character, job history, job performance, and income and income potential:

   i. Traveloge, 1917 Bladensburg Road, N.E., Washington, D.C. 20002. Earning Statements from March and April of 2006 are attached.

   ii. Keshav Enterprises, Inc. t/a Motel 6, 6711 Georgia Avenue, N.W., Washington, D.C. 20012, 202-722-1600. Earning Statements from July, August and September of 2006 are attached.

   iii. Unidentified Ethiopian Restaurant located on 18th Street on or near its intersection with Kalorama Street. Plaintiffs are attempting to obtain specific information and will provide same to the Defendants upon receipt.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL,
& GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

**(B)** **A copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment:**

Copies of the above-referenced probate paperwork, death certificate, autopsy and toxicology reports, Quintana Statement, news articles, earnings statements and police report are attached. Additionally, photographs taken by David Plant and a DVD copy of a NBC-News 4 report are in the possession of undersigned counsel and are available for inspection in accordance with the Rules of this Court.

**(C)** **A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered;**

1) W.H. Bacon Funeral Home, Inc., 3447 14th Street, N.W., Washington, D.C. 20010, Funeral Expenses $4,118.00, January 26, 2007. Plaintiff is in the process of obtaining copies of additional bills for funeral expenses incurred in Guatemala, and will provide those in discovery when received.

2) Plaintiff died prematurely as a direct and proximate result of the Collision. Upon information and belief, no medical treatment was rendered prior to death.

3) There will be a claim for lost of future earning capacity, however unable to determine the extent at this time.

4) Pain and suffering – value of same to be determined by the trier of fact.

**(D)** **Insurance Agreements –** Upon information and belief, both Defendants are self-insured.

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL,
& GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

Respectfully submitted,

STEIN, SPERLING, BENNETT, DE JONG,
DRISCOLL & GREENFEIG, P.C.

By: _____

Jeffrey Fenster  [#09889]
25 West Middle Lane
Rockville, Maryland 20850
(301) 340-2020

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of July, 2007 a copy of the foregoing was served by U.S. mail, first-class postage prepaid, to the following persons:

| | |
|---|---|
| Fredric H. Schuster, Esq. | Leah Brownwell Taylor, Esq. |
| Washington Metro Area Transit Authority | Assistant Attorney General |
| 600 Fifth Street, N.W. | 441 Fourth Street, N.W., 6N |
| Washington, D.C. 20001 | Washington, D.C. 20001 |

_____

Jeffrey Fenster

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL,
& GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

Donald N. Sperling, Esq., Personal      *
Representative of the Estate of Clara      *
Maribel Oxlaj-Gonzalez, Deceased      *
     *    Case No.: 1:07-cv-00557
     Plaintiff      *    Judge Colleen Kollar-Kotelly
     *    Scheduling Conference: August 6, 2007
v.      *
     *
Washington Metropolitan Area Transit Authority      *
     *
     Defendant      *

## CERTIFICATE REGARDING DISCOVERY

I HEREBY CERTIFY that on July 30, 2007, I served on all counsel or pro se parties hereto, Plaintiff's RULE 26(a)(1) INITIAL DISCLOSURE STATEMENT, together with a copy of this Certificate Regarding Discovery. I will retain the original documents in my possession, without alteration, until the case is concluded in this Court, the time for noting an appeal has expired and any appeal noted has been decided.

Respectfully submitted,

STEIN, SPERLING, BENNETT, DE JONG,
DRISCOLL & GREENFEIG, P.C.

By: _____
Jeffrey Fenster  [#09889]
25 West Middle Lane
Rockville, Maryland 20850
(301) 340-2020

Attorneys for Plaintiff

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL,
& GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of July, 2007 a copy of the foregoing was served by U.S. mail, first-class postage prepaid, to the following persons:

Fredric H. Schuster, Esq.                    Leah Brownwell Taylor, Esq.
Washington Metro Area Transit Authority      Assistant Attorney General
600 Fifth Street, N.W.                        441 Fourth Street, N.W., 6N
Washington, D.C. 20001                       Washington, D.C. 20001


_____
Jeffrey Fenster

STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL,
& GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020