UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD N. SPERLING, ESQ., Personal Representative of the Estate of Clara Maribel Oxlaj-Gonzales, <br><br> Plaintiff, <br><br> v. <br><br> WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, <br><br> Defendant. <br> _____ <br><br> WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> THE DISTRICT OF COLUMBIA, <br><br> Third-Party Defendant. | Civil Action No. 07–557 (CKK) |

**MEMORANDUM OPINION**
(April 7, 2008)

Currently before the Court is Plaintiff's Motion for Leave to Amend his Complaint to add the District of Columbia ("the District") as a Party Defendant. The District opposes the Motion, arguing that the amendment is futile because the District did not receive adequate notice of Plaintiff's claim pursuant to D.C. Code § 12-309. After a thorough review of the Parties' submissions, applicable case law and statutory authority, the Court shall grant Plaintiff's [26] Motion for Leave to Amend his Complaint, for the reasons that follow.

## I. BACKGROUND

Plaintiff Donald N. Sperling, Personal Representative of the Estate of Clara Maribel Oxlaj-Gonzalez ("Decedent"), filed this action against Defendant Washington Metropolitan Area Transit Authority ("WMATA") on March 21, 2007, seeking damages in connection with a fatal collision between Decedent and a WMATA bus on January 16, 2007.  According to the Complaint, "[s]uddenly and without adequate warning to Plaintiff's Decedent, [the WMATA bus driver] executed a left turn in violation of a traffic control device . . . and caused the [WMATA bus] to strike Plaintiff's Decedent with force sufficient to cause her death."  Compl. ¶ 3.  The Metropolitan Police Department investigated the incident and prepared a report dated January 17, 2008:

> The preliminary investigation reveals that the Pedestrian was walking Northbound . . . when she then attempted to cross Park Road Northwest.  It is unknown at the time of this writing if the Pedestrian was indeed within the marked crosswalk area.  V1 [presumably, the WMATA bus] was traveling Northbound on 15th Street and while on a green traffic signal, negotiated a left turn at the Intersection of 16th and Park Rd. and collided with the Pedestrian.  The Pedestrian was knocked to the ground from the initial impact.  V1's right side tires and vehicle undercarriage passed over the Pedestrian's body before it came to a stop.  The Pedestrian's injuries sustained proved fatal . . . V1 made a left turn in violation of a posted No Left Turn sign.

Pl.'s Reply, Ex. 1 at 3 (the "Police Report").  The Police Report also described the time and place of the incident, and indicated that the "case is under investigation" by a Detective in the Major Crash Investigations Unit.  *Id.*

On April 13, 2007, WMATA sent a letter to the District describing the incident and advising as to the District's alleged liability:

> The traffic sign warning pedestrians, that buses were allowed to turn left, while all other vehicles were banned from doing so, had been knocked off approximately

> two months before this incident. The District of Columbia failed to properly maintain and promptly replace the missing traffic sign, causing or contributing to the pedestrian's injury. WMATA has been sued for wrongful death by the estate of the pedestrian.

*Id.*, Ex. 1 at 1 ("WMATA's Letter"). WMATA's Letter also enclosed a copy of the Police Report. *Id.* Four days later, WMATA filed a Third Party Complaint in this case against the District claiming that the District "was negligent in failing to maintain the presence and visibility of its sign which informed pedestrians that buses could make left turns lawfully at the intersection where Plaintiff was struck by a WMATA bus." Third Party Compl. ¶ 2. The District filed a Motion to Strike the Third Party Complaint contending that it violated Federal Rule of Civil Procedure 14(a)'s requirement that a theory of liability exist between the impleaded party and the defendant (as opposed to the Plaintiff). *See* Mot. to Strike ¶ 3. The Court denied the Motion to Strike on August 3, 2007, holding that WMATA appropriately filed a Third Party Complaint by alleging facts demonstrating that the District's sign or absence thereof may have contributed to the collision, and that any determination as to whether the District was a concurrent tortfeasor was premature and not appropriately decided in the context of the District's Motion to Strike. *See* Mem. Op. at 6-7 (Aug. 3, 2007).

Plaintiff filed the instant Motion for Leave to Amend his Complaint on October 2, 2007, explaining that "Plaintiff now wishes to name the District as a party defendant to the extent that [its] failure to properly maintain the sign caused or contributed to cause the Collision." Pl.'s Mot. at 2. Although WMATA consented to Plaintiff's Motion, the District opposed it. *Id.* According to the District, Plaintiff's amendment is futile because Plaintiff failed to provide the District with proper notice of its claim pursuant to D.C. Code § 12-309, which provides that

3

> an action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damages was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the approximate time, place, cause and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in the regular course of duty, is a sufficient notice under this section.

*See* Third Party Def.'s Opp'n at 3 (quoting D.C. Code § 12-309) ("Section 12-309"). Plaintiff filed a Reply on October 26, 2007, and the Court permitted the District to file a Sur-Reply on November 8, 2007.

Prior to addressing the instant Motion, the Court *sua sponte* ordered the Parties to brief whether the Court would have jurisdiction over a claim brought by Plaintiff directly against the District. *See* Min. Order dated Nov. 13, 2007. The Court noted that Plaintiff's Complaint (and proposed Amended Complaint) predicated federal court jurisdiction against WMATA on D.C. Code § 9-1107.01(81), but did not appear to state a basis for the Court's jurisdiction over the District. *See Christmas v. Washington Metro. Area Transit Auth.*, 621 F. Supp. 355, 356-58 (D.D.C. 1985) (questioning jurisdiction where plaintiff filed suit against WMATA pursuant to D.C. Code § 9-1107.01(81) and attempted to add the District as a party under a theory of ancillary jurisdiction). Plaintiff filed a supplemental brief on November 30, 2007, asking the Court to exercise supplemental jurisdiction over Plaintiff's claim against the District. *See* Pl.'s Br. at 2-5. The District filed a supplemental brief on December 14, 2007, consenting to the Court's exercise of supplemental jurisdiction. Third Party Def.'s Br. at 2. Because the Court has original jurisdiction over Plaintiff's claim against WMATA, *see* D.C. Code § 9-1107.01(81), the Court shall exercise supplemental jurisdiction over the claim against the District because it arises out of the same case and controversy. *See* 28 U.S.C. § 1367(a) ("in any civil action of which the

district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy . . ."); *Plater v. District of Columbia*, 530 F. Supp. 2d 101, 107 n.7 (D.D.C. 2008) (exercising supplemental jurisdiction over the District where Plaintiff had initially filed suit against only WMATA). Accordingly, the Court shall proceed directly to the merits of the Plaintiff's Motion for Leave to Amend his Complaint.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course at any time before a responsive pleading is served. *See* Fed. R. Civ. P. 15(a). Additionally, Rule 15(a) allows a party to amend its pleading to add a new party. *Id.*; *Wiggins v. Dist. Cablevision, Inc.*, 853 F. Supp. 484, 499 (D.D.C. 1994). Once a responsive pleading is served, however, a party may amend its complaint only by leave of the court or by written consent of the adverse party. *Id.*; *Foman v. Davis*, 371 U.S. 178, 182 (1962). The grant or denial of leave to amend is committed to the sound discretion of the district court. *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). The court must, however, heed Rule 15's mandate that leave is to be "freely given when justice so requires." *Id.*; *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1083 (D.C. Cir. 1998). Indeed, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182.

Accordingly, "[a]lthough the grant or denial of leave to amend is committed to a district court's discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies

by [previous] amendments . . . [or] futility of amendment.'" *Firestone*, 76 F.3d at 1208 (quoting *Foman*, 371 U.S. at 182); *see also Caribbean Broad. Sys.*, 148 F.3d at 1084 (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (holding that a district court's discretion to grant leave to amend is "severely restricted" by Rule 15's command that such leave "be freely given")). Moreover, "'Rule 15(a) does not prescribe any time limit within which a party may apply to the court for leave to amend . . . . In most cases[,] delay alone is not a sufficient reason for denying leave . . . . If no prejudice [to the non-moving party] is found, the amendment will be allowed.'" *Caribbean Broad. Sys.*, 148 F.3d at 1084 (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure: Civil 2d § 1488, at 652, 659, 662-69 (1990 & Supp. 1997)). However, the Court may deny as futile a motion to amend a complaint when the proposed complaint would not survive a motion to dismiss. *James Madison*, *Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *see also* 3 Moore's Federal Practice § 15.15[3] (3d ed. 2000) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").

### III.  DISCUSSION

The Parties[1] disagree as to whether the District received adequate notice of Plaintiff's claim. The Court notes first what is *not* in dispute. The Parties do not disagree that the Police Report and WMATA's Letter (which attached a copy of the police report) are the only two sources of notice sent to the District. *See* Pl.'s Reply at 2-3; Third Party Def.'s Sur-Reply at 2-5.

---

[1] The Court's use of the term "Parties" throughout this Memorandum Opinion is used to describe the Parties to this Motion (i.e., the Plaintiff and the District).

The Parties also do not disagree that Section 12-309 would operate as a jurisdictional bar to Plaintiff's claim against the District if notice is found insufficient under to Section 12-309. *Id. See also Day v. D.C. Dep't of Consumer and Regulatory Affairs*, 191 F. Supp. 2d 154, 158 (D.D.C. 2002) (explaining that notice under Section 12-309 is a condition precedent to maintaining a cause of action against the District).

Section 12-309 is designed "to (1) protect the District of Columbia against unreasonable claims and (2) to give reasonable notice to the District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted." *Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C. 1978). *See also Pinkney v. District of Columbia*, 439 F. Supp. 519, 525 n.6 (D.D.C. 1977) (recounting the legislative history of the statute and describing its purpose as "encourag[ing] prompt settlement of meritorious claims and [permitting] the District to conduct an early investigation of the facts and circumstances surrounding such claims") (quoting H.R. Rep. No. 2010, 72d Cong., 2d Sess. 1 (1933)). Because the statute is "in derogation of the common law principle of sovereign immunity," courts have found that the statute should be "construed narrowly against claimants." *District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995). Nevertheless, the D.C. Court of Appeals has instructed that in close cases, "with respect to the content of [] notice . . . [courts should] resolve doubts in favor of finding compliance with the statute." *Wharton v. District of Columbia*, 666 A.2d 1227, 1230 (D.C. 1995) (emphasis omitted).

Plaintiff correctly argues that police reports may be sufficient to satisfy the notice requirement of Section 12-309 because "the law recognizes that 'written notice by a claimant should not be a prerequisite to legal action if, in fact, *actual notice* in the form of a police report

has been received by the District.'" *Plater v. Dist. of Columbia Dep't of Trans.*, 530 F. Supp. 2d 101, 106 (D.D.C. 2008) (quoting *Allen v. Dist. of Columbia*, 533 A.2d 1259, 1262 (D.C. 1987) (emphasis in original)). Plaintiff incorrectly suggests, however, that notice is satisfied in all cases where "a Metropolitan Police Department detective immediately and thoroughly investigates an accident and promptly makes a detailed official report." Pl.'s Reply at 2-3 (citing *Thomas v. Potomac Elec. Power Co.*, 266 F. Supp. 687, 693-94 (D.D.C. 1967)). Courts interpreting Section 12-309 have repeatedly explained that a police report will only be found sufficient under Section 12-309 if it "contain[s] information as to the approximate time, place, cause and circumstances of the injury or damage' . . . with at least the same degree of specificity required of a written notice." *Pitts*, 391 A.2d at 808 (quoting *Jenkins v. Dist. of Columbia*, 379 A.2d 1177, 1178 (D.C. 1977)).

In this case, the Police Report identified the approximate time and place of the incident. Pl.'s Reply, Ex. 1 at 3-4 (describing the date, time, and location where the WMATA bus struck the Decedent). The cause and circumstances described in the Police Report indicate that "[t]he pedestrian was knocked to the ground from the initial impact [of the WMATA bus that] made a left turn in violation of a posted No Left Turn sign." *Id.*, Ex. 1 at 3. The Court agrees with Defendant that this description "does not make any mention of a defect in the design or maintenance of the traffic signs at that location, which is the basis of plaintiff's claim against the District." Third Party Def.'s Sur-Reply at 2. Where a police report fails to provide sufficient facts "from which it could be reasonably anticipated that a claim against the District might arise," the police report does not provide adequate notice under Section 12-309. *Pitts*, 391 A.2d at 809. Because the facts included in the Police Report do not suggest that the District would be the

8

likely target of a claim by the Plaintiff, the Court agrees with the District that the Police Report, *standing alone*, does not provide adequate notice pursuant to Section 12-309.

Nevertheless, the Police Report was not the only notice received by the District, as WMATA's Letter (enclosing a copy of the Police Report) explained the circumstances in which the District faced a potential claim by the Plaintiff. *See* Pl.'s Reply, Ex. 1 at 1-2. The District does not argue that WMATA's Letter failed to sufficiently describe the time, place, cause, and circumstances of the incident as contemplated by Section 12-309 such that it did not have actual notice of Plaintiff's potential claim.[2] Instead, the District argues that Plaintiff cannot "piggy-back" on WMATA's notice to the District because Section 12-309 requires written notice to originate with the "claimant, his agent or attorney." Def.'s Sur-Reply at 3 (quoting D.C. Code § 12-309).

The District's approach to the statute ignores the long line of cases that have repeatedly recognized that a police report, when placed in proper context by other documents sent to the District, may satisfy the notice requirement of Section 12-309. For example, in *Riesner v. District of Columbia*, the plaintiff's daughter had been raped and murdered by a District of Columbia parolee who had been assisted by the District of Columbia Department of Corrections in obtaining employment at the apartment complex where she lived. 563 F.2d 462 (D.C. Cir. 1977). The District argued that it failed to receive sufficient notice of the potential claim from the plaintiff because the police reports related to the incident did not explain the causal connection between the injury sustained and the negligent acts of its agents. *Id.* at 476. The

---

[2] For this reason, the District's assertion concerning the Police Report that it would have had no idea why "this particular accident . . . would give rise to liability on the part of the District" is unpersuasive. Third Party Def.'s Sur-Reply at 2.

9

lower court initially ruled that the District received adequate notice of the claim through the combination of "police reports incident to [the parolee's] arrest for the Rieser murder, and by letters from the Department of Corrections and Parole Board to other District officials, including the mayor." *Id.* On appeal, the D.C. Circuit affirmed, explaining that "[t]he police report exception is designed to provide for instances in which the District has actual notice." *Id.* The D.C. Circuit then held that the combination of the police reports and the Parol Board letters (despite not having been sent by the claimant, his attorney or agent) provided adequate notice under the statute:

> it is undisputed that the police report correctly indicated the time and place of the rape and murder . . . The letters in the record, if not themselves amounting to 'notice' cognizable under section 12-309, conclusively show that the District had actual notice of the way in which all of these facts interacted to give rise to the District's potential liability. The District does not contend that it was deprived of an opportunity to investigate the matter further, and indeed, the letters suggest that a further investigation was undertaken.

*Id.* at 477 (emphasis omitted).

Other cases following *Riesner* have applied the same reasoning. *See, e.g.*, *Dellums v. Powell*, 566 F.2d 216, 230 & n.57 (D.C. Cir. 1977) ("although we recognize that notice of a claim of false arrest cannot reasonably be found in a police report alone, we think Special Counsel's assertion of a claim coupled with the police reports gave the District all the notice to which it was lawfully entitled," even though the Special Counsel's letter may not have independently met the requirements of Section 12-309); *Mazloum v. Dist. of Columbia Metro. Police Dep't*, 522 F. Supp. 2d 24, 62-63 (D.D.C. 2007) (finding that a Complaint Summary Report, in conjunction with a Memorandum of the MPD Office of Professional Responsibility, "did in fact place the District on notice," and therefore, were sufficient under Section 12-309);

10

*Tibbs v. Williams*, 263 F. Supp. 2d 39, 43 (D.D.C. 2003) (holding that a police report and letters from plaintiff's attorney, none of which were individually sufficient to provide the District with notice under Section 12-309, nevertheless complied with the statute because they "gave no doubt" that a claim against the District was likely). Like *Riesner* and the other cases cited above, the Police Report and WMATA's Letter "gave no doubt" that Plaintiff could potentially file a claim against the District, and the District does not claim that it was deprived of an opportunity to timely investigate the incident.[3]

The District does not dispute this line of authority (or even acknowledge it), but rather argues that the Court should ignore WMATA's letter and consider the Police Report in a vacuum based on *Smith v. District of Columbia*, 271 A.2d 786 (D.C. 1970) (finding that a letter from an insurance company as the sole form of notice to the District did not meet the requirements of Section 12-309). A review of *Smith* reveals that it does not support the District's position. In that case, the only notice received by the District as to Smith's claim was sent by her insurance company. *Id.* at 787. In the present case, the District received actual notice of the Plaintiff's claim through the combination of the Police Report and WMATA's Letter. That distinction is meaningful because the D.C. Circuit recognized in *Riesner* (and subsequent courts have explained), that letters sent to the District by persons other than the claimant, his attorney, or agent may explicate a Police Report and provide adequate notice, even if the letters themselves

---

[3] The Court notes that the Police Report suggests that further investigation may have occurred, *see* Pl.'s Reply, Ex.1 at 3 ("[t]his case is under investigation by [a Detective of the] Major Crash Investigations Unit"), but neither Party indicates whether any additional reports were prepared.

are not legally cognizable forms of notice under Section 12-309.[4]  Accordingly, the Court finds that the combination of the Police Report and WMATA's Letter (enclosing a copy of the Police Report) provided the District with actual notice of Plaintiff's potential claim and met the requirements of Section 12-309.  As the District provides no other basis for opposing Plaintiff's Motion for Leave to Amend, the Court shall permit the Plaintiff's proposed amendment.

### IV.  CONCLUSION

For the reasons set forth above, the Court shall grant Plaintiff's [26] Motion for Leave to Amend his Complaint.  An appropriate Order accompanies this Memorandum Opinion.

Date:  April 7, 2008

　　　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　COLLEEN KOLLAR-KOTELLY
　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[4] Another reason why the District's argument is unpersuasive is that the *Smith* decision was appealed to, and reversed by, the United States Court of Appeals for the D.C. Circuit prior to the Congressional law that removed the federal appellate function over District of Columbia Court of Appeals cases. *See District of Columbia v. Smith*, 297 A.2d 787, 788 (D.C. 1972) (explaining that the Columbia Court Reform and Criminal Procedure Act of 1970 made the District of Columbia Court of Appeals the highest court of the District of Columbia effective February 1, 1971, and that the D.C. Circuit's reversal of the *Smith* decision would be followed as law of the case).  The D.C. Circuit's decision in *Smith* held that a letter from an insurance company *did* meet the requirements of Section 12-309 because "[t]o hold otherwise would be giving effect to an overly strict and technical reading of the statute while ignoring its legislative history and the purpose of its enactment."  463 F.2d 962, 965 (D.C. Cir. 1972).  Even though this holding is not "binding" precedent, it nevertheless remains persuasive authority and the District does not contend that it has been controverted by a subsequent District of Columbia Court of Appeals decision.